1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MICHAEL SCHMIDT, on behalf of                No.  2:20–cv–2400–KJN
    himself and the Class and Collective
12  members,                                     ORDER

13                  Plaintiffs,

14      v.

15  VISION SERVICE PLAN, et al.,

16                  Defendants.

17

18

19          Plaintiff Michael Schmidt moves for preliminary approval of settlement of his class, Fair

20  Labor Standards Act ("FLSA") collective, and Private Attorney General Act ("PAGA") claims.

21  (ECF No. 44).[1]  Defendants Vision Service Plan (VSP), VSP Global, Inc., Marchon Eyewear,

22  Inc., VSP Optical Group, Inc., and Eyefinity, Inc. do not oppose the motion.

23          By and through this motion, plaintiff seeks:  (1) conditional certification of the settlement

24  class and FLSA collective; (2) preliminary approval of the settlement; (3) approval of the class

25  notice; (4) appointment of plaintiff as class representative; (5) appointment of plaintiff's counsel

26  as class counsel; (6) appointment of the settlement administrator; and (7) scheduling

27  _____

    [1] On consent of both parties, this case was referred to the undersigned by District Judge Drozd.
28  (ECF No. 52.)

1    final approval of the settlement.

2          The court has considered the motion before it and is prepared to find that the requirements

3    for conditional certification of the class and FLSA collective, settlement, appointment of the class

4    representatives, appointment of class counsel, and appointment of the settlement administrator are

5    satisfied at this preliminary stage.  However, the court has noted below several concerns

6    regarding the proposed settlement terms and the notice of settlement which must be addressed

7    before the court can preliminarily approve the settlement.  Thus, for the reasons set forth below,

8    this motion is DENIED without prejudice.

9    I.      Background

10          A.   Factual and Procedural History

11          On December 2, 2020, plaintiff filed this putative class action on behalf of himself and

12   other similarly situated non-exempt hourly employees for defendants.  (ECF No. 1.)  Plaintiff

13   alleges the following causes of action:  (1) violation of the Fair Labor Standards Act, 29 U.S.C.

14   § § 201, et seq.; (2) failure to pay for all hours worked under California Labor Code § 204; (3)

15   failure to pay minimum wages under Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1,

16   (4) failure to pay overtime wages under Labor Code § 510; (5) failure to authorize and permit

17   and/or make available meal and rest periods under Labor Code §§ 226.7 and 512; (6) failure to

18   provide accurate itemized wage statements under Labor Code § 226; (7) waiting time penalties

19   under Labor Code §§ 201-203; (8) violation of California Business and Professions Code §§

20   17200 et seq.; (9) PAGA civil penalties to California Labor Code § 2699(a); (10) PAGA civil

21   penalties pursuant to California Labor Code § 2699(f).  (See generally ECF No. 33.)

22          On August 9, 2022, plaintiff filed this motion for preliminary approval of class and

23   collective action settlement.  (ECF No. 44.)  On December 19, 2022, the matter was reassigned to

24   the undersigned on consent of all parties.  (ECF No. 52.)

25          B.   Terms of the Proposed Settlement

26          Defendants have agreed to pay a non-reversionary maximum gross settlement amount of

27   $3,450,000 to settle all claims in the amended complaint.  (ECF No. 44-2 at 41, ¶ 2(n)).  The

28   following will be deduced from the gross settlement award:

(i)     Plaintiff's service award (up to $15,000);

(ii)    Class counsel's fee awards (up to 33.33% of the gross settlement amount, or
$1,150,000);

(iii)   Class counsel's costs (estimated to be $25,000);

(iv)    Settlement administrator costs (estimated to be $20,880); and

(v)     the payment to the LWDA for its share of the PAGA payment ($75,000).

(Id. at 14, ¶ 24 and 42, ¶ 2(u)).

The above deductions, if fully approved, would yield a net settlement of $2,164,120.  (Id. at 14, ¶ 24.)  As proposed, the net settlement would be distributed across all class members who do not opt out of the settlement, on a pro-rata basis, as determined by the number of workweeks they worked as class members during the class period.  (Id. at 52-53, ¶ 33.) An individual is eligible to share in the proposed settlement if he or she belongs to any of the following:

- "California Class Members":  All current and former employees of defendants who were employed as customer service representatives (CSRs) or equivalent positions in California at any time between December 2, 2016, and November 12, 2021;

- "PAGA Group":  All current and former employees of defendants who were employed as CSRs or equivalent positions in California at any time between July 31, 2019 and November 12, 2021; and

- "FLSA Collective Members": All current and former employees of defendants who were employed as CSRs or equivalent positions in the United States at any time between December 2, 2017 and November 12, 2021.

(Id. at 40, ¶ 2(d)-(g)).

All settlement class members will be paid a settlement award from the net settlement amount.  (Id. at 52, ¶¶ 31-33.)  Any settlement class member who fails to submit a timely request to exclude themselves from the settlement by following the procedure set forth in the settlement notice will automatically be deemed a settlement class member.  (Id. at 52, ¶ 32.)  Neither the settlement agreement nor the briefing indicates what portion of the settlement amount, if any, is allocated toward the FLSA collective action.  (See generally ECF Nos. 44-1, 44-2.)

1    The settlement agreement dictates that the following language will appear on the reverse

2  side of settlement checks issued to class members included within the FLSA Period:

3
> This check is your settlement payment in connection with the court-
> approved class action Settlement in the action <u>Schmidt v. Vision Service</u>
4
> <u>Plan, et al.</u>, filed in E.D. Cal., Case No: 2:20-cv-02400-JAM-KJN. By
> signing or cashing your check, you consent to join the Collective Action and
5
> affirm your release of FLSA claims against Releasees.

6  (ECF No. 44-2 at 46, ¶ 18.)  The class notice states "[a]ny person who requests exclusion (opts

7  out) of the settlement will not be entitled to any Settlement Award and will not be bound by the

8  Settlement Agreement or have any right to object, appeal or comment thereon."[2]  (<u>Id.</u> at 64, ¶ 6.)

9    A. Legal Standards

10    1. Settlement agreement

11    Under Rule 23, a court must determine if it "will likely be able to" both: (1) "certify the

12  class for purposes of the judgment on proposal" under Rule 23(a) and 23(b); and (2) "approve the

13  proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  Under the FLSA, a court must ask if

14  members of the collective action are "similarly situated" to the original plaintiffs, <u>see</u> <u>Campbell v.</u>

15  <u>City of Los Angeles</u>, 903 F.3d 1090, 1109 (9th Cir. 2018), and whether the settlement is "a fair

16  and reasonable resolution of a bona fide dispute over FLSA provisions" under <u>Lynn's Food</u>

17  <u>Stores, Inc. v. United States</u>, 679 F.2d 1350, 1355 (11th Cir. 1982).  <u>Brown v. Tetra Tech, Inc</u>,

18  No. 2023 WL 4162271, at *3 (E.D. Cal. June 23, 2023).

19    PAGA claims are distinct from class and FLSA claims.  "[P]laintiffs may bring a PAGA

20  claim <u>only</u> as the state's designated proxy, suing on behalf of <u>all</u> affected employees."  <u>Kim v.</u>

21  <u>Reins Int'l Cal., Inc.</u>, 9 Cal. 5th 73, 86-87 (2020) (emphases original).  Because a PAGA claim is

22  not "a collection of individual claims for relief" like a class action, <u>Canela v. Costco Wholesale</u>

23  <u>Corp.</u>, 971 F.3d 845, 855 (9th Cir. 2020) (discussing <u>Kim</u>'s holding), PAGA claims "need not

24  satisfy Rule 23 class certification requirements," <u>Hamilton v. Wal-Mart Stores, Inc.</u>, 39 F.4th 575,

25  583 (9th Cir. 2022).  However, like class action settlements, PAGA settlements must be approved

26

27  _____
[2] As discussed below, this statement is incorrect with respect to the PAGA claims; even those
who opt out of the Rule 23 class settlement will still be entitled to a portion of the PAGA
28  payment and will be bound by settlement of the PAGA claims.

4

by the court.  Cal. Lab. Code § 2699(l)(2).  Courts in this circuit apply "a Rule 23-like standard,"

asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and

adequate."  Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

        2.   Notice Requirements

For classes likely to be certified under Rule 23(b)(3) "the court must direct to class

members the best notice that is practicable under the circumstances, including individual notice to

all members who can be identified through reasonable effort," imposing specific requirements on

the contents of the notice.  See Fed. R. Civ. P. 23(c)(2)(B).

Where parties seek settlement of PAGA claims and class claims in one action, this court,

along with other courts in this district, have required the class notice to clearly articulate that even

those who do not opt out of a settlement will release PAGA claims and will receive a portion of

the PAGA payment.  Almanzar v. Home Depot U.S.A., Inc., 2022 WL 2817435, at *19 (E.D.

Cal. July 19, 2022).  Uribe v. Crown Bldg. Maint. Co., 70 Cal. App. 5th 986, 1001 (4th Dist.

2021), as modified on denial of reh'g (Oct. 26, 2021) ("A defining feature of the class action

procedure is that a class member may opt out of the class if he or she does not wish to be bound

by the result of the suit . . . . PAGA actions do not afford the same opt out feature.") (cleaned up).

Similarly, in hybrid Rule 23 and FLSA actions, the parties' notice forms must indicate 1)

the hybrid nature of the action, 2) the claims involved, 3) the options available to the class

members, i.e., how to participate in or abstain from the Rule 23 and FLSA actions, and 4) the

consequences of opting in to the FLSA collective action, opting out of the Rule 23 class action, or

doing nothing.  Brown, 2023 WL 4162271 at *3.

II.      Analysis

      A.  Settlement Agreement

The FLSA requires written consent from members who wish to opt in to an FLSA

collective.  See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective]

action unless he gives his consent in writing to become such a party and such consent is filed in

the court in which such action is brought.").  This court has consistently found that obtaining

consent by cashing a check is inadequate under the FLSA.  See, e.g., Beltran v. Olam Spices &

1   Vegetables, Inc., 2021 WL 1105246, at *4 (E.D. Cal. Mar. 23, 2021) (noting "weight of

2   authority" that consent via cashing a settlement check is insufficient under the FLSA, regardless

3   of whether checks are distributed prior to or after the final approval hearing); see also Haralson v.

4   U.S. Aviation Servs. Corp., 383 F.Supp.3d 959, 969 (N.D. Cal. 2019) ("Many courts, having

5   consulted § 216(b)'s requirements, have rejected this opt-in by settlement check proposal.")

6   Here, the settlement agreement expressly provides that those who cash their settlement award

7   checks will be deemed to have become collective members and released their FLSA claims.

8   (ECF No. 44-2 at 46, ¶ 18.)  Accordingly, the proposed opt in method described in the settlement

9   agreement does not comply with the FLSA and should be corrected in any renewed motion.

10          B.  Notice

11          Federal Rule of Civil Procedure 23 imposes specific requirements on the contents of the

12   notice and provides that "the court must direct to class members the best notice that is practicable

13   under the circumstances, including individual notice to all members who can be identified

14   through reasonable effort."  See Fed. R. Civ. P. 23(c)(2)(B).  The notice must inform potential

15   members that "that they may enter an appearance through an attorney if the member so desires."

16   See Fed. R. Civ. P. 23(c)(2)(B)(i).  Here, the notice fails to inform potential class members of

17   their right to appear through an attorney.

18          The settlement notice provides that those who opt out will not be bound by the settlement

19   and will receive no payment, while those who do not opt out will ultimately receive their

20   "prorated Settlement Award" by check.  (ECF Nos. 44-2 at 64, ¶ 6).  However, this statement is

21   incorrect.  As this court has previously observed, opting out of a Rule 23 settlement will not

22   preserve any class member's right to bring their own PAGA claim for the alleged violations in a

23   future suit.  Cf., e.g., Almanzar v. Home Depot U.S.A., Inc., 2022 WL 2817435, at *19 (E.D. Cal.

24   July 19, 2022) (reminding that "even those who opt out will still receive a share of the 25%

25   PAGA payment"); with, e.g., Almanzar v. Home Depot U.S.A., Inc., 2023 WL 4373979, at *3

26   (E.D. Cal. July 6, 2023) (granting preliminary approval where settlement and notice were revised

27   to accurately convey distinction between Rule 23 and PAGA payment).

28          The notice is similarly defective in its explanation of the FLSA claims.  As with Rule 23

1    and PAGA settlements, courts considering approval of settlements in Rule 23 and FLSA actions,

2    including this court, consistently require class notice forms to explain:  1) the hybrid nature of the

3    action, 2) the claims involved, 3) the options available to the class members, i.e., how to

4    participate or abstain from the Rule 23 and FLSA actions, and 4) the consequences of opting-in to

5    the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.  Brown,

6    2023 WL 4162271, at *3.  Here, however, the proposed notice of settlement does not explain the

7    hybrid nature of the settlement, how the recipient can participate or not participate in the FLSA

8    collective action, or the consequences of opting-in to the FLSA collective action.  (See generally

9    ECF No. 44-2 at 60-66.)

10          Finally, like the settlement agreement, the notice provides that those who cash their

11   settlement award checks will be deemed to have become collective members and released their

12   claims under the FLSA against releasees through November 12, 2021.  (Id. at 64 at ¶ 5.)  But as

13   noted above, the proposed opt-in by check procedure does not comply with the FLSA.  See, e.g.,

14   Beltran, 2021 WL 1105246, at *4.

15          C.  FLSA allocation

16          Plaintiff's briefing conveys sufficient information for the court to make a preliminary

17   determination on the settlement agreement, with one exception.  The settlement provides for a

18   single settlement fund from which both the FLSA and Rule 23 claims are paid, but the parties

19   have not conveyed what portion is allocated to the FLSA claims.  (See generally ECF No. 44-1

20   and 44-2.)  "Courts that have approved settlements releasing both FLSA and Rule 23 claims

21   generally do so only when the parties expressly allocate settlement payments to FLSA claims."

22   Thompson v. Costco Wholesale Corp., 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017).  Millan

23   v. Cascade Water Servs., Inc., 310 F.R.D. 593, 602 (E.D. Cal. 2015).  Thus, in any renewed

24   motion, it should be made clear to the court how the value of the FLSA claims is reflected in the

25   settlement amount.  Plaintiff may convey this information to the court in supplemental briefing.

26   ////

27   ////

28   ////

1    III.    Conclusion

2          For the foregoing reasons, the settlement agreement and notice are defective and must be

3    cured before the court can properly evaluate them.  Therefore, plaintiff's unopposed motion for

4    provisional class certification and preliminary approval of settlement (ECF No. 44) is denied

5    without prejudice to a renewed motion addressing the court's concerns.

6          IT IS SO ORDERED.

7    Dated:  August 30, 2023

8

9                                                    KENDALL J. NEWMAN
                                                     UNITED STATES MAGISTRATE JUDGE
10   schm.2400

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8