1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL SCHMIDT, on behalf of            No.  2:20-cv-2400-KJN
     himself and the Class and Collective
12   members,                                 ORDER

13                      Plaintiffs,

14          v.

15   VISION SERVICE PLAN, et al.,

16                      Defendants.

17

18

19          Plaintiff Michael Schmidt moves for preliminary approval of settlement of his Rule 23

20   class, Fair Labor Standards Act ("FLSA") collective, and Private Attorney General Act

21   ("PAGA") claims.  (ECF No. 57).[1]  Defendants Vision Service Plan (VSP), VSP Global, Inc.,

22   Marchon Eyewear, Inc., VSP Optical Group, Inc., and Eyefinity, Inc. do not oppose the motion.

23   ////

24   ////

25   ////

26

27   _____

28   [1] On consent of the parties, this case was referred to the undersigned by District Judge Drozd.
     (ECF No. 52.)

                                    1

1      The parties appeared for a hearing on the instant motion on January 16, 2024.[2]  (ECF No.

2  57.)  Attorneys David Leimbach and Scott Gordon appeared for plaintiff; attorney Ashley Fasano

3  appeared for defendants.

4      By and through this motion, plaintiff seeks:  (1) conditional certification of the settlement

5  class and FLSA collective; (2) preliminary approval of the settlement; (3) approval of the class

6  notice and FLSA opt in form; (4) appointment of plaintiff as class representative; (5) appointment

7  of plaintiff's counsel as class counsel; (6) appointment of the settlement administrator; and (7)

8  scheduling final approval of the settlement.  (Id.)  As discussed below, this motion is GRANTED.

9      I.     Background

10      Defendants are a vision care health insurance company.  (First Amended Complaint

11  (FAC), ECF No. 33 at ¶ 32.)  Plaintiff and settlement class members are approximately 1,800

12  current and former non-exempt Customer Service Representatives (CSRs) in California and

13  throughout the United States.  (ECF No. 57-3 at 6, ¶ 2(cc); ECF No. 57-2 at 9-11.)[3]  Plaintiff

14  alleges that defendants required class members to perform significant amounts of off-the clock

15  work, including during meal and rest breaks, as a matter of policy.  (ECF No. 33 at ¶¶ 41-42.)

16      On December 2, 2020, plaintiff filed this putative class and collective action on behalf of

17  himself and other similarly situated non-exempt hourly employees.  (ECF No. 1.)  On March 2,

18  2021, defendants filed their answer, denying each allegation and asserting twenty-two affirmative

19  defenses.  (ECF No. 10.)

20      A.  Discovery and Mediation

21      The parties agreed to early mediation and on July 15, 2021, plaintiff and defendants

22  attended a virtual full-day mediation with mediator Scott Markus.  (ECF No. 57-2 at ¶ 18.)  Prior

23  to and at mediation, counsel for plaintiff and settlement class members ("class counsel") made an

24

25  [2] On August 30, 2023, court denied plaintiff's prior motion for preliminary approval, ECF No. 44, without prejudice, noting deficiencies in the settlement agreement and class notice, and

26  requesting further briefing regarding defendant's allocation of the settlement payment to the FLSA claims.  (ECF No. 56.)

27  [3] As plaintiff notes, the instant renewed motion contains limited briefing. (ECF No. 57-2 at 8.) Thus, where appropriate, the court cites to plaintiff's first renewed motion for preliminary

28  approval of class and collective settlement, ECF No. 44.

independent investigation of the facts and law relating to the allegations asserted in the lawsuit and extensively analyzed the potential damages that might be recovered following a review of documents and information produced by defendants.  (Id., ¶¶ 19, 20.)  Prior to mediation, defendants provided informal discovery such as timekeeping and payroll information, as well as data concerning settlement class members including number of workweeks, pay periods, and other information.  (Id.)

After several months of negotiating and conferring about the terms of a long-form settlement agreement, the parties executed the initial settlement agreement on January 4, 2022.  (Id. at ¶ 21.)  Plaintiff agreed to amend the complaint to include the PAGA claims and on February 8, 2022, plaintiff filed a First Amended Complaint (FAC) adding the PAGA allegations to this action.  (ECF No. 33.)

### B. Settlement Agreement Terms

#### 1. Award and Deductions

Defendants have agreed to pay a non-reversionary maximum gross settlement amount of $3,450,000 to settle all claims in the amended complaint.  (ECF No. 57-3 at 4, ¶ 2(o)).  This amount is subject to the following deductions:

- Plaintiff's service award (up to $15,000); (id. at 6, ¶ 2(y));
- Counsel's fee awards (up to 33.33% of the gross settlement amount, or $1,150,000); (id. at 4, ¶ 2 (j));
- Counsel's costs (estimated to be $25,000); (id. at 3, ¶ 2 (d));
- Settlement administrator costs (estimated to be $26,700); (id. at 6, ¶ 2 (aa)); and
- Payment to the LWDA for its share of the PAGA payment ($75,000).  (Id. at 16, ¶ 35(c)).

The above deductions, if fully approved, would yield a net settlement of $2,133,300.  (ECF No. 57-2 at ¶ 29; ECF No. 57-3 at 5, ¶ 2(p).)

The settlement agreement contains a "clear sailing" provision, under which defendants agree not to oppose any fee award request up to 33.33% of the gross settlement amount.  (ECF No. 57-3 at 15, ¶ 35 (b).)  Any residual amount under $25,000 will be paid to the cy pres beneficiary, the

Monarch School.  (See id. at 19, ¶ 48(a).)  The Monarch School is a non-profit organization that cares for homeless children.  (Id.)  If the total residual amount is $25,000 or greater, a second distribution will occur to those settlement class members who cashed their settlement award check.  (Id. at 19, ¶ 47(b).)

### 1. Class and Collective Definitions

An individual is eligible to share in the proposed settlement if he or she belongs to any of the following: 1) plaintiff; 2) "California class members;" i.e., all current and former employees of defendants who were employed as Customer Service Representatives (CSRs) or equivalent positions in California at any time between December 2, 2016 and November 12, 2021; 2) "PAGA Group;" i.e., all current and former employees of defendants who were employed as CSRs or equivalent positions in California at any time between July 31, 2019, and November 12, 2021; and 3) "FLSA Collective Members;" i.e., all current and former employees of defendants who were employed as CSRs or equivalent positions in the United States at any time between December 2, 2017 and November 12, 2021.  (ECF No. 57-2 at ¶ 34; ECF No. 57-3 at 3-5, ¶ 2(b), (n), (t).)

### 2. Releases

Plaintiff and all settlement class members release and discharge all releasees, finally, forever and with prejudice, from any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against releasees that were or could have been asserted in the operative complaint and amended complaint.[4]  (ECF No. 57-3 at 9, ¶ 22.) Plaintiff and the PAGA group will release all releasees from any and all claims, causes of action,

---

[4] The operative complaint is the amended complaint and alleges the following causes of action: (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; (2) failure to pay for all hours worked under California Labor Code § 204; (3) failure to pay minimum wages under Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1, (4) failure to pay overtime wages under Labor Code § 510; (5) failure to authorize and permit and/or make available meal and rest periods under Labor Code §§ 226.7 and 512; (6) failure to provide accurate itemized wage statements under Labor Code § 226; (7) waiting time penalties under Labor Code §§ 201-203; (8) violation of California Business and Professions Code §§ 17200 et seq.; (9) PAGA civil penalties to California Labor Code § 2699(a); (10) PAGA civil penalties pursuant to California Labor Code § 2699(f).  (See generally ECF No. 33.)

1   damages, expenses, benefits, interest, penalties, attorneys' fees, costs, and any other form of relief

2   or remedy in law, equity, or whatever kind or nature that were asserted or could have been

3   asserted with respect to the claims asserted in plaintiff's LWDA Notice, the complaint, and the

4   First Amended Complaint for the entire PAGA Period.  (Id. at 9-10, ¶ 22.)

5        The parties have agreed to use ILYM Group, Inc. to administer the settlement.  (Id. at 6, ¶

6   2(z).)  The settlement administrator will be responsible for determining the amount of the

7   settlement award to be paid to each settlement class member based on the total number of

8   workweeks that each settlement class member worked as a CSR for defendants beginning from

9   the longest applicable statute of limitations through November 12, 2021.  (Id. at 16-17, ¶ 39.)

10  Each settlement class member will be assigned a number of settlement shares based on their

11  respective number of workweeks covered by the settlement.  (Id. at 17, ¶ 39(a)(i).)  Each FLSA

12  workweek will be equal to one settlement share; to reflect the increased value of state law claims,

13  California workweeks will be equal to two settlement shares.  (Id.)

14       Members of the PAGA Group will receive a pro rata portion of 25% ($25,000) of the

15  PAGA allocation based on the number of pay periods they worked for defendants during the

16  PAGA period.  (Id. at 17, ¶ 40.)  The average overall gross recovery is approximately $1,917 per

17  CSR, and the average overall net recovery is approximately $1,185 per CSR.  (ECF No. 57-2 at

18  16, ¶ 30.)  California class members can exclude themselves from the California class by

19  following the opt-out procedure set forth in the notice of settlement.  (ECF No. 57-3 at 31.)

20  FLSA collective members can choose to participate or not participate by submitting an Opt-in

21  Form.  (Id. at 35.)

22       The settlement agreement provides that plaintiff was to submit a copy of the agreement to

23  the LWDA, as required by California Labor Code § 2699(l)(2), at the time the settlement

24  agreement was submitted for final approval.  (ECF No. 57-3 at 19, ¶ 49.)

25  II.    Legal Standards

26         A.  Rule 23

27       When parties seek approval of a class settlement before class certification, courts must

28  analyze "both the propriety of the certification and the fairness of the settlement."  Staton v.

5

1   Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see Fed. R. Civ. P. 23(e) ("The claims, issues, or

2   defenses of a certified class—or a class proposed to be certified for purposes of settlement—may

3   be settled, voluntarily dismissed, or compromised only with the court's approval.").  The court

4   considers whether the proposed class meets the certification requirements, and whether the

5   proposed settlement is "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 952.

6   At the preliminary approval stage, the court considers the likelihood that it will ultimately

7   approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B).  The final approval stage comes

8   after notice to and feedback from the class and a fairness hearing. Fed. R. Civ. P. 23(e)(2).

9           B.  PAGA

10          A representative action under PAGA is not a class action, but rather one "on behalf of the

11  government." See Kim v. Reins Int'l Cal., Inc., 9 Cal. 5th 73, 86-87 (2020).  However, like class

12  action settlements, PAGA settlements must be approved by the court.  Cal. Lab. Code

13  § 2699(l)(2).  Courts in this circuit apply "a Rule 23-like standard," asking whether the settlement

14  of the PAGA claims is "fundamentally fair, reasonable, and adequate."  Haralson v. U.S. Aviation

15  Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

16          Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

17  code violations on behalf of himself and other current or former employees.  Cal. Lab. Code §

18  2699(a).  Indeed, "[p]laintiffs may bring a PAGA claim only as the state's designated proxy, suing

19  on behalf of all affected employees." Kim, 9 Cal. 5th at 87.  "Unlike a class action, there is no

20  mechanism for opting out of a judgment entered on a PAGA claim." Amaro v. Anaheim Arena

21  Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (4th Dist. 2021) (cleaned up).  Thus, a PAGA

22  plaintiff owes a duty both to their "fellow aggrieved workers," who will be inalterably bound by

23  the judgment on the PAGA claim, and to the public at large because "they act, as the statute's

24  name suggests, as a private attorney general." O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d

25  1110, 1129, 1133-34 (N.D. Cal. 2016).  Civil penalties recovered under PAGA are distributed

26  between "the aggrieved employees" (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).

27  Any settlement of PAGA claims must be approved by the court; and the proposed settlement must

28  also be sent to the LWDA at the same time it is submitted to the court.  Cal. Lab. Code §

6

1   2699(l)(2).

2       C.  FLSA

3       "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees

4   that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69

5   (2013).  Because an employee cannot waive claims under the FLSA, they may not be settled

6   without supervision of either the Secretary of Labor or a district court.  See Barrentine v. Ark.-

7   Best Freight Sys., Inc., 450 U.S. 728, 740 (1981); Beidleman v. City of Modesto, No. 1:16–cv–

8   01100–DAD–SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018).  Employees may bring

9   collective actions under the FLSA, representing all "similarly situated" employees, but "each

10   employee [must] opt-in to the suit by filing a consent to sue with the district court."  Does I thru

11   XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000).

12       The Ninth Circuit has not established criteria for district courts to consider in determining

13   whether an FLSA settlement should be approved.  Dunn v. Teachers Ins. & Annuity Ass'n of

14   Am., 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).  However, district courts in this circuit

15   have frequently applied a widely-used standard adopted by the Eleventh Circuit, which looks to

16   whether the settlement is a fair and reasonable resolution of a bona fide dispute.  Id.; see also

17   Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352–53 (11th Cir. 1982); Selk v.

18   Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).  "A bona fide

19   dispute exists when there are legitimate questions about the existence and extent of Defendant's

20   FLSA liability."  Selk, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted).  A

21   court will not approve a settlement of an action in which there is certainty that the FLSA entitles

22   plaintiffs to the compensation they seek, because doing so would shield employers from the full

23   cost of complying with the statute.  Id.

24   III.   Analysis

25       A.  Provisional Class Certification under Rule 23(a), (b)(3), and (g)

26       Rule 23 establishes five prerequisites for any class certification: (1) numerosity;

27   (2) commonality; (3) typicality; (4) adequacy of representation; and (5) one of the three options

28   under Rule 23(b).  See Fed. R. Civ. P. 23(a) and (b); Leyva v. Medline Indus. Inc., 716 F.3d 510,

512 (9th Cir. 2013).  Relevant here, Rule 23(b)(3) states that class action may be maintained only if "questions of law or fact common to class members predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  If the class is certified, the court must appoint class counsel and a class representative.  Fed. R. Civ. P. 23(e), (g)

Plaintiff seeks provisional certification of a class defined as "[a]ll current and former employees of [d]efendants who were employed as Customer Service Representatives (CSRs) or equivalent positions in California at any time between December 2, 2016, and November 12, 2021."  (ECF No. 57-3 at 3, ¶ 2(b).)

### 1.  Numerosity

For class certification, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  Gen. Tel. Co. of Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980).  Courts have found the numerosity requirement satisfied when the class comprises as few as 39 members, where joining all class members would serve only to impose financial burdens and clog the court's docket.  See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 474 (E.D. Cal. 2010).

Plaintiff estimates there are approximately 1,800 members in the putative class.  (ECF No. 57-2 at 12, ¶ 11.)  Maintaining this number of individual suits based on the same claims and facts would be impracticable.  See, e.g., Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319, n.10 (9th Cir. 1982) (noting that numerosity has been satisfied for class of fewer than 100 members) (vacated on other grounds).  Thus, plaintiff satisfies the numerosity requirement.

### 2.  Commonality

Rule 23 class certification requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy commonality, the class representative must demonstrate the litigation will "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

8

1   "So long as there is even a single common question, a would-be class can satisfy the commonality

2   requirement of Rule 23(a)(2)."  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir.

3   2013) (quoting Wal–Mart, 564 U.S. at 350).

4          Here, California class members all perform essentially the same primary job duties—

5   answering and responding to customer service phone calls, responding to internal and customer e-

6   mails, customer follow-up, documenting interactions, and undergoing trainings.  (ECF No. 57-2

7   at 12, ¶ 9.)  Plaintiff argues that defendants' wage and hour violations are in large measure borne

8   of standardized policies, practices, and procedures applicable to these primary job duties, creating

9   pervasive issues of fact and law that are amenable to resolution on a class-wide (and collective-

10  wide) basis.  (ECF No. 44-1 at 27.)  For example, due to defendants' focus on call volume as

11  compared to time worked, CSRs were required to perform certain pre- and post-call tasks off the-

12  clock.  (Id.)  Accordingly, the court agrees that common questions of law and fact form the basis

13  of each class member's claims, and thus finds that plaintiff satisfies the commonality

14  requirement.  See Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165–66 (9th Cir. 2014) (finding

15  commonality satisfied when class action claims raised common question of whether the employer

16  had practices or unofficial policies that violated California Labor Code provisions).

17                                        3.  Typicality

18          Typicality is satisfied when "the claims or defenses of the representative parties are

19  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality test asks

20  "whether other members have the same or similar injury, whether the action is based on conduct

21  which is not unique to the named plaintiffs, and whether other class members have been injured

22  by the same course of conduct."  Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir.

23  2018) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

24          Here, plaintiff's claims are typical of those of all other California class members, as class

25  members were subject to the same allegedly illegal policies and practices that form the basis of

26  the claims asserted in this case.  (ECF No. 57-2 at 12, ¶ 11.)  As plaintiff's claims are reasonably

27  co-extensive of the other class members, the typicality requirement is satisfied.

28  ////

1          4.   Adequacy of Representation

2          To satisfy Rule 23(a)'s final requirement, the representative parties must show they will

3   "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  When

4   analyzing the adequacy of the representation, the court must consider 1) whether the named

5   plaintiffs and their counsel have any conflicts of interest with other class members 2) whether the

6   named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.

7   Sali, 909 F.3d at 1007.  Certification will be denied in instances of "actual fraud, overreaching, or

8   collusion."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 948 (9th Cir. 2011).

9          The court is satisfied that the class is adequately represented:  the named plaintiff has

10  shared claims and interests with the class (and no conflicts of interest)[5] and has retained qualified

11  and competent counsel who have prosecuted the case vigorously.  Plaintiff's attorney, Carolyn H.

12  Cottrell at Schneider Wallace Cottrell Konecky LLP, and Tamra C. Givens at the Shavitz Law

13  Group, P.A., have extensive experience in litigating complex class action cases, including settling

14  wage and hour class actions in California.  (ECF Nos. 44-2; 44-3.)  This experience suggests that

15  counsel can effectively advocate for the proposed class.

16          5.   Rule 23(b)(3) Requirements

17          Plaintiff invokes Rule 23(b)(3), which requires a finding "that the questions of law or fact

18  common to class members predominate over any questions affecting only individual members,

19  and that a class action is superior to other available methods for fairly and efficiently adjudicating

20  the controversy."  Fed. R. Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more demanding"

21  than that of Rule 23(a).  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).

22

23  [5] The settlement agreement proposes a service award up to $15,000 for the sole named plaintiff in
    this action, Michael Schmidt, which amounts to 0.43% of the gross settlement amount of

24  $3,450,000.  (ECF No. 57-3 at 6, ¶ 2(y)).  Courts routinely approve incentive awards to
    compensate named plaintiffs for the services they provided and the risks they incurred during the

25  course of the class action litigation."  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 300

26  (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).  This amount will
    be considered at the final settlement step.  For purposes of provisional certification of the class,

27  the court does not find the proposed incentive award so disproportionate that it necessarily creates
    a conflict of interest or renders plaintiff an inadequate representative.

28

1    Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication

2    by representation." Id. at 623.  Superiority tests whether the class mechanism is better than other

3    available method, mainly by reducing litigation costs and promoting greater efficiency.  Id. at

4    620.  In a class action settlement, the court need not address whether the case, if tried, would

5    present issues of manageability under Rule 23(b)(3)(D).  Id. at 593.

6          Here, common questions of law and fact predominate over questions affecting individual

7    members because plaintiff's claims hinge on the uniform policies and practices of defendants,

8    rather than the treatment the California class members experienced on an individual level.  (ECF

9    No. 44-2 at 27, ¶ 75.)  As a result, plaintiff contends that the resolution of these alleged class

10   claims would be achieved using common forms of proof, such as defendants' uniform policies

11   and practices, and would not require inquiries specific to individual California class members.

12   (Id.)  When a class action challenges a defendant's uniform policies, courts generally find the

13   predominance requirement satisfied.  See Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d

14   1150, 1154-55 (9th Cir. 2016); Palacios v. Penny Newman Grain, Inc., 2015 WL 4078135, at *6

15   (E.D. Cal. July 6, 2015) (finding predominance where defendants uniformly failed to properly

16   calculate wages and overtime, provide reimbursements, account for meal and rest periods, and

17   noting there will be individual issues apart from calculating individual damages).

18         Because defendants' liability would turn on a review of its uniform policies and practices,

19   concentrating litigation of the issues in one lawsuit would be superior to individual actions.  See

20   Amchem, 521 U.S. at 620.  Further, when class members' individual recoveries might be less in

21   separate suits, the class members' individual interests generally favor certification rather than

22   individual prosecution.  Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001);

23   see Fed. R. Civ. P. 23(b)(3)(A) (one factor in superiority determination is class members'

24   interests in bringing separate actions); Amchem, 521 U.S. at 617 (Rule 23(b)(3) serves to

25   vindicate "the rights of groups of people who individually would be without effective strength to

26   bring their opponents into court at all"); see Fed. R. Civ. P. 23(b)(3)(B) (superiority determination

27   also considers "extent and nature of any litigation concerning the controversy already begun by or

28

                                            11

1  against class members").[6]  Thus, common questions predominate, and a class action is a superior

2  vehicle for adjudicating the dispute.

3       In sum, because the court finds Rule 23(a)'s and Rule 23(b)(3)'s requirements are met, the

4  class is provisionally certified for settlement purposes.

5                 6.  Appointment of Class Representative and Class Counsel

6       The court provisionally appoints plaintiff Michael Schmidt as class representative.

7  Plaintiff's interests align with those of the unnamed class members, and (as discussed above)

8  there do not appear to be any conflicts of interest sufficient to render him an inappropriate class

9  representative.

10       "[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).

11  When appointing class counsel, a court must consider "(i) the work counsel has done in

12  identifying or investigating potential claims in the action; (ii) counsel's experience in handling

13  class actions, other complex litigation, and the types of claims asserted in the action;

14  (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

15  representing the class." Fed. R. Civ. P. 23(g)(1)(A).

16       Plaintiff seeks designation of Carolyn Hunt Cottrel at the Schneider Wallace Cottrell

17  Konecky LLP and Tamra C. Givens at the Shavitz Law Group, P.A. as class counsel.  The court

18  concludes that provisional designation of proposed class counsel is appropriate given that they are

19  experienced in litigating class action cases, including wage and hour class actions, and they

20  appear to have advanced plaintiff's position, investigated the claims thoroughly, and engaged in

21  discovery prior to settlement.  (See, generally, ECF Nos. 44-2 and 44-3.)  Based on their previous

22  efforts, the court anticipates counsel will continue to devote appropriate resources to represent the

23  class.  For these reasons, the court provisionally designates plaintiff's counsel as class counsel.

24  ////

25  ////

26  ─────────────────────

27  [6]  The other two factors for superiority (desirability of concentrating litigation in this forum, and difficulty of managing the class action, Fed. R. Civ. P. 23(b)(3)(C) & (D)) do not apply when the action settles before class certification.  See Mejia v. Walgreen Co., No. 2:19-CV-00218-WBS

28  AC, 2020 WL 6887749, at *6 (E.D. Cal. Nov. 24, 2020).

B.  Conditional Certification of FLSA Collective Action

Plaintiffs seeking conditional certification of a collective action under the FLSA have the burden to show that they are "similarly situated" to other employee class members.  Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1341 (N.D. Cal. 2014).  Plaintiffs can show they are "similarly situated by making substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan."  Rodriguez v. Danell Custom Harvesting, LLC, 293 F. Supp. 3d 1117, 1130 (E.D. Cal. 2018) (quoting Nen Thio, 14 F. Supp. 3d at 1340) (internal quotation marks omitted).  Courts are to apply a lenient standard when determining whether to conditionally certify a collective action.  See Syed v. M-I, L.L.C., 2014 WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014).

Plaintiff seeks condition certification of the following FLSA collective action: "[a]ll current and former employees of defendants who were employed as CSRs or equivalent positions in the United States at any time between December 2, 2017, and November 12, 2021."  (ECF No. 57-2 at 17, ¶ 34.)  Here, FLSA collective members are "similarly situated" within the meaning of 29 U.S.C. § 216(b), as they are subject to the same hiring and training process; timekeeping, payroll, and compensation policies; performance metrics and policies; and team communication policies.  (ECF No. 44-1 at 28; ECF No. 44-2 at ¶ 69.)  Thus, the FLSA collective meets the requirements for certification under 29 U.S.C. § 216(b).

Further, the court is satisfied that a bona fide dispute exists, as there are legitimate questions about the existence and extent of defendants' FLSA liability.  See Kerzich v. Cnty. of Tuolumne, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018).  Plaintiff's original complaint alleges FLSA violations; specifically, that defendants' policies gave rise to off the clock work and meal and rest break violations, and defendants denied these violations in their answer.  (ECF No. 1 at ¶¶ 69-76; ECF No. 10.)  The fact that the FLSA claims were alleged prior to settlement negotiations supports the existence of a bona fide dispute.  Compare Maciel v. Bar 20 Dairy, LLC, 2018 WL 5291969, at *6 (E.D. Cal. Oct. 23, 2018) (denying hybrid Rule 23/FLSA settlement where none of the settlement award was designated for FLSA claims and where the FLSA claims were amended complaint after settlement negotiations).  Further, the settlement

contemplates release of the FLSA claims in exchange for consideration.  During the hearing on the instant motion, plaintiff's counsel indicated that the FLSA claims were valued at $7.26 million, and that defendants have valued the FLSA award at approximately one-third of the non-PAGA award.  See Khanna v. Intercon Sec. Systems, Inc., 2014 WL 1379861, at *5 (E. D. Cal. Apr. 8, 2014) (approving a hybrid Rule 23/FLSA settlement where two-thirds of the settlement payment was paid for the state law claims and one third was paid for FLSA claims).

### B.  Preliminary Approval of Proposed Settlement

Settlement of a class action must be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In reviewing whether the proposed settlement is fair, reasonable, and accurate, Rule 23 requires the court to consider whether:  (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  Courts often use these same factors in evaluating the fairness of an FLSA settlement.  See e.g., Khanna, 2013 WL 1193485, at *2.  The court has considered these factors and find that proposed settlement of the class and FLSA claims to be fair, reasonable, and adequate.

### 1.  Adequacy of Representation

The first factor, whether "the class representatives and class counsel have adequately represented the class," Fed. R. Civ. P. 23(e)(2)(A), is redundant of Rule 23(a)(4).  Mejia, 2020 WL 6887749, at *9 (quotation omitted).  The court preliminarily finds that the class representatives and class counsel adequately represent the class for purposes of Rule 23(e)(2)(A).

### 2.  Arm's Length Negotiation

The second factor requires the court to consider whether the proposed settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (noting the importance of evaluating whether the settlement was the product of "an arms-length, non-collusive, negotiated resolution").  The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  Staton, 327

14

F.3d at 960.  The Ninth Circuit has observed that "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorneys' fee."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks, citations omitted).  Thus, the court is to examine the agreement for "subtle signs" of self-dealing by counsel, such as where: (a) "counsel receive a disproportionate distribution of the settlement, or [ ] the class receives no monetary distribution but class counsel are amply rewarded"; (b) payment of attorneys' fees occurs "separate and apart from class funds" and goes unopposed (a "clear sailing" agreement), which "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; or (c) "the parties arrange for unused funds to revert to defendants rather than be added to the class fund."  Id. at 947 (cleaned up).

Here, while the proposed settlement is the product of months of negotiations between the parties and private mediation, multiple indicia of collusion are present.  The agreement provides that class counsel will request attorney's fees up to 33.33% percent (one-third) of the gross settlement amount, at $1,149,885.  (ECF No. 57-3 at 15, ¶ 35(b)).  The settlement agreement proposes a service award up to $15,000 for the sole named plaintiff in this action, Mr. Schmidt. This award sets plaintiff apart from unnamed class members, for whom average overall net recovery is approximately $1,185 per CSR.  (ECF No. 57-2 at 16, ¶ 30.)  A plaintiff who stands to receive several thousand dollars extra has an incentive to support agreements that are unfair to absent class members.  See Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1165 (9th Cir. 2013) ("Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness[.]").

The agreement contains a clear sailing provision, under which defendants agree not to oppose any fee award request up to 33.33% of the gross settlement amount.  (ECF No. 57-3 at 15, ¶ 35(b).)  Clear sailing provisions such as these might allow "a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the

class." Bluetooth, 654 F.3d at 947 (quoting Lobatz v. U.S. W. 18 Cellular of Cal., Inc., 222 F.3d 1142, 1148 (9th Cir. 2000)).  That said, any of the agreed fees, costs and incentive payments not awarded to the plaintiffs and their counsel will not revert to defendants, but instead will be returned to the class as a whole or paid cy pres.  (ECF No. 57-3 at 19, ¶ 48.)  This fact mitigates the negative implications of the fee and incentive award proposals.

The mere presence of indicia of collusion is "not a death knell."  Kim v. Allison, 8 F.4th 1170, 1180 (9th Cir. 2021).  However, where indicia are present, the district court must examine them and develop the record to support its final approval decision.  Id., quoting In re Bluetooth Headset Prods. Liab., 654 F.3d at 947.  The court expects that plaintiff, if seeking final approval of a settlement agreement that contains the above noted red flags, will provide sufficient information to offset concerns of collusion.

### 3.   Adequacy of Relief Provided to the Class

The adequacy of relief determination requires consideration of four sub-factors:

    i.     the costs, risks, and delay of trial and appeal;
    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    iii.   the terms of any proposed award of attorney's fees, including timing of payment; and
    iv.    any agreement required to be identified under Rule 23(e)(3).

See Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).  The amount offered in the proposed settlement agreement is generally the most important consideration of any class settlement.  See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

Here, the amount of the class and FLSA relief is adequate in light of the costs, risks, and delay of trial and appeal.  Defendants' total exposure, for both substantive and derivative claims, is estimated at approximately $39,065,828.  (ECF No. 44-2 at 29, ¶ 84.)  The gross settlement amount of $3,450,000 thus accounts for 13.75% of plaintiff's estimates of defendants' exposure for substantive violations, and 8.8% of plaintiff's estimates of defendants' exposure for substantive and derivative violations.  (Id. at 30, ¶ 85.)  The court agrees with counsel's analysis concerning the significant risks and weaknesses in plaintiff's case, particularly given the nature of

the off-the-clock work and that the settlement class members worked in varying locations, under differing supervisors and managers, which would invariably complicate certification efforts and proving the claims on the merits.  (ECF No. 44-1 at 15.)  There are also weeks in which settlement class members did not work due to vacation, sick time, and personal time such that no damages exist. (Id.)  The types of off-the-clock work at issue also entail evidentiary issues as to the violation levels that could be established.  (Id.)  Thus, the costs, risks, and delay of any potential trial weigh in favor of settlement.

The court further finds relief is adequate upon consideration of the proposed method of distributing relief.  Class members will not have to submit claims to receive payment; instead, they will be identified through defendants' employment records; the settlement administrator will search for class members' most recent address through searches and by skip tracing; and class members will receive the settlement payment by mail unless they opt out of the settlement.  (ECF No. 44-2 at 47, ¶ 21(d).)  Each class member's share will be calculated based on how many workweeks they worked during the class period, which can be readily determined by defendants' employment records and which will be stated on the class notice; class members will also have an opportunity to challenge errors relating to the number of workweeks calculated on the notice.  (Id. at ¶¶ 22-23.)

As for the terms of any proposed award of attorney's fees, at this juncture, plaintiff has not demonstrated that an award exceeding the presumed 25% benchmark or the proposed fee is justified.  In the forthcoming Rule 23(h) motion and motion for final approval, class counsel will be expected to fully substantiate the justification for an attorney's fees award—especially a request exceeding the 25% benchmark.  See In re Bluetooth, 654 F.3d at 942 (stating that district courts should "award only that amount of fees that is reasonable in relation to the results obtained").  Counsel shall address factors such as "(1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyer's reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size."  Mejia, 2020 WL

1    6887749, at *10 (quotation omitted).  Counsel shall brief the fee application using the lodestar

2    method as a cross-check, which will assist the court in confirming the reasonableness of the

3    requested fees.  For this cross check, counsel shall note the differences in the prevailing rates

4    between the Eastern District of California and other districts when submitting their motion.

5            Accordingly, upon consideration of the factors set forth at Rule 23(e)(2)(C)(i)-(iv), and in

6    light of the strong judicial policy favoring settlement of class actions, the undersigned finds the

7    proposed relief to be adequate, and thus supports preliminary approval.  See Class Plaintiffs v.

8    Seattle, 955 F.2d 1268, 1276 (9th Cir.1992).  However, a request for final approval of a

9    settlement that contains a clear sailing provision and proposed attorney's fees in excess of the

10   25% benchmark will be closely scrutinized and will be denied absent sufficient justification that

11   the terms of any fee award are fair and reasonable.

12                          4.    Equitable Treatment of Class Members

13           The fourth factor addresses whether the proposed settlement agreement "treats class

14   members equitably relative to each other."  See Fed. R. Civ. P. 23(e)(2)(D).  The settlement

15   agreement does not overtly discriminate between any segments of the class.  Settlement shares

16   will be distributed according to a weighted, per workweek formula.  The parties have valued each

17   California workweek as two settlement shares and each FLSA workweek as one settlement share,

18   such that California class members will still receive an overall total of three settlement shares for

19   their workweeks.  The allocation method, which is based on the number of workweeks, will

20   ensure that longer-tenured workers receive a greater recovery.  (Id.)[7] See Villafan v.

21   Broadspectrum Downstream Servs., Inc., 2020 WL 6822908, at *6 (N.D. Cal. Nov. 20, 2020).

22           In sum, the court finds that the proposed settlement of the class and FLSA claims to be

23   fair, reasonable, and adequate.

24   ////

25   ////

26   ────────────────────

27   [7] As to equitable treatment between the class representative and the class members, the court
     incorporates its above discussion regarding the incentive award.  Given that the court retains
     discretion to award a lower amount depending on the briefing provided at the final approval

28   stage, this is not a source of impermissible inequity.

1          5.   Fairness of PAGA settlement

2          A court analyzing the compromise of a PAGA claim must therefore consider whether the

3   settlement is "fundamentally fair, reasonable, and adequate' with reference to the public policies

4   underlying the PAGA." O'Connor, 201 F. Supp. 3d at 1133 (citation omitted); Haralson, 383 F.

5   Supp. 3d at 979.

6          The settlement agreement provides that the PAGA group will receive a pro rata portion of

7   25% ($25,000) based on the number of pay periods they worked for defendants during the PAGA

8   Period.  (ECF No. 57-3 at 16, ¶ 35(c).)  Plaintiff estimates defendants' exposure for PAGA

9   penalties at $11,255,750.  (ECF No. 44-2 at ¶ 84.)  The PAGA allocation is within the range of

10  reasonable settlements.  See, e.g., Viceral v. Mistras Grp., 2016 WL 5907869, at *8–9 (N.D. Cal.

11  Oct. 11, 2016).  Considering the other factors from Rule 23(e)(2), the court finds the PAGA

12  portion of the settlement to be similarly fair and adequate for the PAGA members.

13         California Labor Code § 2699(l)(2) requires that the LWDA be notified of any settlement

14  agreement.  Here, the settlement agreement states that plaintiff was to submit a copy of the

15  agreement to the LWDA at the time the settlement agreement was submitted for final approval.

16  (ECF No. 57-3 at 19, ¶ 49.)  In plaintiff's motion for final approval, plaintiff shall indicate

17  whether LWDA was notified and whether any response has been received.

18         C.   Release of Claims

19         All class members who do not timely opt-out of the settlement will be deemed to have

20  released defendants from the released claims.  (ECF No. 57-3 at 9, ¶ 22.)  For FLSA collective

21  members, FLSA claims will only be released for those who affirmatively opt-in.  (Id.)  The

22  released claims track plaintiff's claims in this action and the settlement does not appear to release

23  unrelated claims that class and FLSA Members may have against defendants.

24         Similarly, the released PAGA claims appropriately track the claims at issue in this case

25  and are not overbroad.  (Id. at 9, ¶ 23.)  Members of the PAGA group may not opt out of the

26  PAGA component of the settlement, but even those who opt out of the class action settlement will

27  still receive a payment from the PAGA component of the settlement and will still be subject to the

28  release of PAGA claims.  (Id. at 13, ¶ 29.)

1          D.  Administration and Proposed Notice

2          A district court must ensure class members were notified of the proceedings, had the

3  opportunity to opt out or (for those who remain in the settlement) object to any of the settlement's

4  terms, and were provided the chance to appear at fairness hearing.  Fed. R. Civ. P. 23(e)(1)-(5).

5  To effectuate these procedures, the parties have agreed to retain ILYM to handle the notice and

6  claim administration process.  (ECF No. 57-3 at 6, ¶ 2(z).)  The court approves.

7          The court also approves the proposed notice and plan.  "Notice is satisfactory if it

8  generally describes the terms of the settlement in sufficient detail to alert those with adverse

9  viewpoints to investigate and to come forward and be heard."  Rodriguez, 563 F.3d at 962.   Here,

10  the notice fairly, plainly, accurately, and reasonably provide class members with all required

11  information, including (among other things):  (1) a summary of the lawsuit and claims asserted;

12  (2) a clear definition of the classes; (3) a description of the material terms of the settlement,

13  including the estimated payment; (4) a disclosure of the release of the claims should they remain

14  class members; (5) an explanation of class members' opt-out rights, a date by which they must

15  opt out, and information about how to do so; (6) the date, time, and location of the final fairness

16  hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and

17  class-representative service awards.  Fed. R. Civ. P. 23(b)(3); see also Fed. R. Civ. P. 23(e)(4)

18  and (5) (requiring the court to provide class members with an opportunity to be excluded from the

19  settlement or object to the terms).  Additionally, the court approves of the proposed FLSA opt-in

20  process, where the FLSA Opt-in Form will be distributed by the settlement administrator with the

21  notice of settlement.  (See ECF No. 57-3 at 35-36, Opt-in Form.)

22          The court finds that the class notice provides the best notice practicable, satisfies the

23  notice requirements of Rule 23, adequately advises class members of their rights under the

24  settlement agreement, and meets the requirements of due process.

25          E.  Cy Pres Award

26          Courts must consider whether awards to the beneficiary "(1) address the objectives of the

27  underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any

28  member will be benefitted."  Nachshin v. AOL, LLC, 663 F.3d 1034, 1039 (9th Cir.2011).  Here,

the parties have not provided information to support a determination that a driving nexus between the plaintiff class and the proposed cy pres beneficiary, the Monarch School, which is a non-profit organization that cares for homeless children.  Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir.2012) (citing Nachshin, 663 F.3d at 1038).  (See also ECF No. 57-3 at 19, ¶ 48(a).)

Nevertheless, where, as here, a cy pres distribution is contingent on the outcome of the claims process for a cash distribution, issues regarding the identification of recipients "will not be ripe until it is determined that available cash remains in th[e] fund after the claims process has concluded."  Dennis, 697 F.3d at 865.  Accordingly, the court defers its determination on whether the Monarch School is an appropriate cy pres beneficiary.  In the motion for final approval, plaintiff shall provide sufficient information on this topic.

### **ORDER**

For the above reasons, it is HEREBY ORDERED that:

1. Plaintiff's Motion for Preliminary Approval of Class and Collective Action Settlement, ECF No. 57, is GRANTED;

   a. The settlement agreement is preliminarily approved as fair, reasonable, and adequate;

   b. The California class and FLSA collective are provisionally certified for settlement purposes only;

      i. The ILYM Group, Inc. is appointed settlement administrator;

      ii. Schneider Wallace Cottrell Konecky LLP and Shavitz Law Group, P.A. is appointed as counsel for the California class, the PAGA group, and the FLSA collective;

      iii. Plaintiff Michael Schmidt is provisionally appointed the class representative for the California class;

2. The proposed notice of settlement is approved;

3. A fairness hearing is scheduled for July 2, 2024, at 10:00 a.m., in Courtroom 25 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814; and

4.   The implementation schedule below is adopted.

| | |
|---|---|
| Deadline for Defendants to provide ILYM Group, Inc with the Class Data | Within 20 business days after the Court enters an order granting preliminary approval of the Settlement |
| Deadline for Defendants to provide to Plaintiff's counsel a list with the names of CSRs and the total number of workweeks that each CSR worked | Within 20 business days after the Court enters an order granting preliminary approval of the Settlement |
| Deadline for ILYM Group, Inc to mail (and email if possible) the Notice of Settlement to CSRs | Within 10 business days after ILYM Group, Inc receives the Class Data |
| Deadline for CSRs to postmark Opt-in Forms and requests to opt-out | 45 calendar days after Notice of Settlement mailed ("Notice Deadline") |
| Deadline for CSRs to file objections to the Settlement | 45 calendar days after Notice of Settlement mailed ("Notice Deadline") |
| Deadline for filing of Final Approval Motion | May 28, 2024 (Per Local Rule, at least 35 days before Final Approval Hearing) |
| Deadline for Class Counsel to File a Motion for Approval of the Fee and Cost Award and of the Service Award to the Plaintiff | May 28, 2024 (Per Local Rule, at least 35 days before Final Approval Hearing) |
| Final Approval Hearing | July 2, 2024, at 10:00 a.m., in Courtroom 25 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814 |

Dated:  January 26, 2024

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

schm.2400

22