1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11
12

MICHAEL SCHMIDT, on behalf of
himself and the Class and Collective
members,

Case No. 2:20-cv-2400-CSK

13

Plaintiffs,

ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR FINAL

14

v.

APPROVAL AND GRANTING IN PART
PLAINTIFF'S RENEWED MOTION FOR

15

VISION SERVICE PLAN, et al.,

ATTORNEYS' FEES

16

Defendants.

(ECF Nos. 84, 85)

17

18        Pending before the Court is Plaintiff Michael Schmidt's renewed motion for final

19    approval of class and collective action settlement and renewed motion for award of

20    attorneys' fees and costs and service award.[1] (ECF Nos. 84, 85.) Defendants Vision

21    Service Plan, VSP Global Inc., Marchon Eyewear, Inc., VSP Optical Group, Inc., and

22    Eyefinity, Inc. (collectively "Defendants") do not oppose either motion. A hearing was

23    held on November 22, 2024, with attorney Ori Edelstein appearing on behalf of Plaintiff

24    and attorney Marie Jenny appearing on behalf of Defendants. (ECF No. 86.) No

25    objections for final approval have been received by the Court.

26

27    _____
      [1]   This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all
28    purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF
      Nos. 49, 51, 52, 61.)

For the reasons stated below, the Court GRANTS Plaintiff's renewed motion for final approval and GRANTS IN PART Plaintiff's renewed motion for attorneys' fees. The Court will approve the class and collective action settlement, award $862,500 in attorneys' fees, award $5,271.82 in litigation costs, and grant a service award of $10,000 to Plaintiff.

## I.    BACKGROUND

In the First Amended Complaint ("FAC"), Plaintiff alleges that Defendants violated federal and California wage and hour laws with respect to current and former non-exempt employees, including but not limited to Customer Service Representatives ("CSRs"), employed by the vision care health insurance company operated by Defendants. FAC ¶¶ 49, 61 (ECF No. 33). Throughout the relevant time period, Plaintiff alleges that Defendants committed violations as to Plaintiff and Settlement Class Members by not paying Plaintiff and Settlement Class Members proper minimum and overtime wages for work performed off-the-clock, and by not providing Settlement Class Members with a reasonable opportunity to take meal and rest periods and failing to compensate them when such meal and rest periods were not provided. FAC ¶ 6. The FAC asserts causes of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the California Labor Code, and California Business and Professions Code §§ 17200, *et seq.* FAC ¶¶ 71-146. Plaintiff also brings claims for penalties pursuant to § 2699(a) of the California Labor Code Private Attorneys General Act ("PAGA") and penalties pursuant to § 2699(f) of the PAGA. *Id.* ¶¶ 147-168.

After informal discovery was completed, on July 15, 2021, the Parties entered into private mediation with mediator Scott Markus in an attempt to resolve the claims. Pl. Renewed Mot. Fin. Appr. at 4 (ECF No. 85-1). As a result of the mediation session and arms-length negotiations thereafter, the Parties reached a settlement that resolves all of the claims in this litigation. *Id.* at 14. The Parties executed a Class Action Settlement Agreement on January 4, 2022 (ECF No. 36-2) and an Amended Class Action Settlement Agreement on December 8, 2023 (ECF No. 57-3). The Amended Settlement

Agreement provides a non-reversionary maximum Gross Settlement Amount ("GSA") of $3,450,000. *Id*. at 19. After payment of Plaintiff's service award ($15,000), the proposed class counsel's fee award ($1,150,000), class counsel's costs (up to $25,000), settlement administrator's costs ($26,700), and payment to the Labor and Workforce Development Agency ("LWDA") and members of the PAGA group ($100,000), the Net Settlement Amount ("NSA") is estimated to be $2,133,300. *Id*. at 19-20. The "total number of Settlement Class Members is 2,163 of which 864 are California Class Members, 2,105 FLSA Class Members, and 661 PAGA Members." Decl. of Lesly Rubalcava ¶ 13 (ECF No. 85-8). The Amended Settlement Agreement provides "an average gross recovery of approximately $1,694.22 per California Class Member and approximately $701.34 per Opt-in Plaintiff." *Id*. at 20. The PAGA payment of $75,000 will be sent to LWDA, with the remainder of the PAGA allocation of $25,000 to be distributed to the PAGA Group Members pursuant to the terms of the Amended Settlement Agreement. *Id*. at 16, 21; Rubalcava Decl. ¶ 21.

On January 26, 2024, Magistrate Judge Kendall J. Newman approved Plaintiff's motion for preliminary approval of class and collective action settlement. 1/26/2024 Order (ECF No. 59). Specifically, the Court preliminarily approved the following: the Amended Settlement Agreement as fair, reasonable, and adequate; approved the proposed notice of settlement; and for settlement purposes only, provisionally certified the California class and FLSA collective, appointed Schneider Wallace Cottrell Konecky LLP and Shavitz Law Group, P.A. as counsel for the California class, the PAGA group, and the FLSA collective, appointed the ILYM Group, Inc. as the settlement administrator, and provisionally appointed Plaintiff Michael Schmidt as the class representative for the California class. *Id*. The Court identified issues that Plaintiff needed to address in the motion for final approval, including sufficiently addressing indicia of collusion and providing sufficient information regarding the nexus between the Plaintiff class and the proposed *cy pres* beneficiary, the Monarch School, a non-profit organization that cares for homeless children. *Id*. at 15-16, 21. The Court deferred its determination regarding

whether the Monarch School was an appropriate *cy pres* beneficiary. *Id.* at 21. The Court also noted that "plaintiff has not demonstrated that an award exceeding the presumed 25% benchmark or the proposed fee is justified. In the forthcoming Rule 23(h) motion and motion for final approval, class counsel will be expected to fully substantiate the justification for an attorney's fees award—especially a request exceeding the 25% benchmark." *Id.* at 17.

On June 25, 2024, Plaintiff filed an unopposed motion for final approval of class and collective action settlement and a motion for award of attorneys' fees and costs and service award. (ECF Nos. 72, 73.) On July 11, 2024, the Court ordered Plaintiff to file a supplemental brief addressing the identified issues in the Court's January 26, 2024 order, including sufficiently addressing indicia of collusion and providing sufficient information regarding the nexus between Plaintiff's class and the proposed *cy pres* beneficiary. (ECF No. 74.) After reviewing Plaintiff's supplemental briefing (ECF No. 77), the Court denied Plaintiff's motions without prejudice subject to renewal on July 29, 2024 because the proposed *cy pres* beneficiary (a non-profit organization that cares for homeless children) did not have any ties to the lawsuit or the interests of the class members, nor did Plaintiff assert any such ties. (ECF No. 79.)

After meeting and conferring, the Parties identified a new *cy pres* beneficiary and agreed to replace the Monarch School with the National Employment Law Project ("NELP"), a non-profit organization focused on worker's rights. Pl. Renewed Mot. Fin. Appr. at 7-8. On October 17, 2024, the Parties signed an Addendum to the Amended Settlement making the change to the *cy pres* beneficiary. *Id.* The ILYM Group posted the new Addendum to the Amended Settlement to the case website, along with the new November 2024 hearing date and time for the renewed motions for final approval and attorneys' fees. *Id.* at 8.

Plaintiff now moves for final approval of the proposed settlement. Pl. Renewed Mot. Fin. Appr. Plaintiff also separately moves for approval of attorneys' fees and costs, and the service award. Pl. Renewed Mot. Atty. Fees (ECF No. 84). On November 22,

2024, the Court held the fairness hearing on these motions. (ECF No. 86.) On November

27, 2024, Plaintiff also filed a supplemental brief regarding attorneys' fees and costs

from Schneider Wallace Cottrell Konecky LLP, as ordered by the Court. (ECF No. 87.)

## II.    RENEWED MOTION FOR FINAL APPROVAL

### A.    Final Certification of Settlement Class and Collective

After granting preliminary approval of the proposed settlement, the Court

analyzed the class certification factors pursuant to Federal Rules of Civil Procedure 23

and found that provisional certification of the class for purposes of settlement was

warranted. 1/26/2024 Order at 7-12. Because the Court's findings on the adequacy of

the class remain unchanged and no objections to class certification have been received,

the Court adopts the findings in the January 26, 2024 Order that the class fully complies

with the requirements of Rule 23 and accordingly finalizes the certification of the class.

*See* 1/26/2024 Order at 7-12; *see also Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998,

1008 (E.D. Cal. 2019) (holding that a court need not repeat its class certification analysis

for final approval when findings on the issues have not changed and no objections to

class certification have been raised). For the reasons stated in the January 26, 2024

Order, the class is certified for purposes of settlement, the Court reaffirms the

appointment of Plaintiff Michael Schmidt as Class Representative for purposes of

settlement, and the Court reaffirms the appointment of Carolyn Hunt Cottrel of Schneider

Wallace Cottrell Konecky LLP and Tamra C. Givens of Shavitz Law Group, P.A. as

Class Counsel, for purposes of settlement. *See* 1/26/2024 Order at 12.

The Court also found in its January 26, 2024 Order the FLSA collective met the

requirements for certification under 29 U.S.C. § 216(b). 1/26/2024 Order at 13-14.

Because no additional substantive issues concerning the certification of the FLSA

collective have been raised, the Court adopts its findings in the January 26, 2024 Order

and certifies the FLSA Collective for settlement purposes. *Id.*

/ / /

/ / /

1

**B.    Final Approval of Class Action Settlement**

2

1.    <u>Adequacy of Notice</u>

3      The Court also previously reviewed and approved the proposed Notice and found

4 it to be satisfactory. 1/26/2024 Order at 20. Because the Court previously found that the

5 substitution of the *cy pres* beneficiary to identify a new beneficiary that has a sufficient

6 nexus to the lawsuit and the interest of the class members is a de minimis change that

7 does not require issuing supplemental or new notice to the class, the Court examines the

8 adequacy of the original Notice. 9/10/2024 Order at 2 (ECF No. 81) (citing *In re Groupon*

9 *Marketing and Sales Practices Litigation*, 593 Fed. Appx. 699, 701 (9th Cir. 2015)). The

10 Court also notes that notice was provided regarding the change to the *cy pres*

11 beneficiary where the ILYM Group posted the new Addendum to the Amended

12 Settlement to the case website.

13      Following the grant of preliminary approval, the ILYM Group's case manager

14 Lesly Rubalcava represents that the Notice Packet was mailed via first class mail to all

15 class members. Rubalcava Decl. ¶ 7. The class data file, which included, in part,

16 Settlement Class Member's last known mailing addresses, was provided by Defendants'

17 counsel and processed against the National Change of Address ("NCOA") database for

18 purposes of updating and confirming the mailing addresses of the Settlement Class

19 Members. *Id*. ¶¶ 5-6. The Class List contained "2,160 individuals of which 831 were

20 identified as California Class Members, 2,102 FLSA Class Members, and 638 PAGA

21 Members." *Id*. ¶ 5.

22      The Notice Packet was mailed to 2,160 individuals contained in the Class List and

23 emailed to 1,749 individuals with only 1 undeliverable email, for whom Defendants

24 provided an email address. *Id*. ¶ 7. The ILYM Group became aware that 32 California

25 Class Members were inadvertently excluded from the California Class due to out-of-state

26 addresses and were subsequently mailed a corrective notice. *Id*. ¶¶ 9-10. In addition,

27 three individuals were inadvertently included in the California Class due to California

28 addresses and were also subsequently mailed a corrective notice. *Id*. During the

response period, the ILYM Group received five requests from self-identified individuals who believed they should be included in the Class List. After calculating their workweeks worked during the Class Periods, three of these five individuals were determined to belong in the Class List and were then mailed their respective Class Notice. *Id.* ¶¶ 11-12. Ms. Rubalcava states 200 Notice Packets were returned undelivered, with one being returned with a forwarding address that was promptly re-mailed to the forwarding address provided. *Id.* ¶ 14. After performing a skip trace on the 199 returned Notice Packets, 137 updated addresses were obtained and promptly re-mailed to the new addresses. *Id.* Two Class Members also contacted the ILYM Group requesting a Notice Packet be remailed, which the ILYM Group did. *Id.* ¶¶14-15. A total of 62 Notice Packets have been deemed undeliverable with no found updated address after conducting skip tracing. *Id.* ¶ 16. Ms. Rubalcava states that the ILYM Group has "received 1 request for exclusion from the Settlement" and "has not received any objections to the Settlement." *Id.* ¶¶ 17-18. The ILYM Group reports "a total of 1,367 Participating Settlement Class Members of which 863 are Participating California Class Members, 957 are Participating FLSA Class Members, and 661 are PAGA Members, representing 63.19% of the 2,163 Settlement Class Members." *Id.* ¶ 20.

Given the above, the Court finds adequate notice has been provided and is satisfactory pursuant to Federal Rules of Civil Procedure 23(e)(1). *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (holding "best notice practicable," rather than actual notice, is the proper standard for providing notice of proposed settlement to absent class members).

### 2.    Sufficiency of the Settlement

In assessing the fairness of a class action settlement, the Court must determine whether the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2). This requires the Court to balance: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the

extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). These factors are non-exclusive and discussion of factors not relevant to a case need not be addressed. *Id*. at 576 n.7. Where the parties reach a settlement agreement prior to class certification, as is the case here, "settlement approval requires a higher standard of fairness" "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks omitted).

However, consideration of these factors alone is insufficient to survive appellate review. *See Briseno v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) (holding that Rule 23(e) requires district courts "apply the *Bluetooth* factors to scrutinize fee arrangements—even in post-class certification settlements—to determine if collusion may have led to class members being shortchanged.") The *Bluetooth* factors—also referred to as "subtle signs" of collusion—include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorneys' fees sought; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

In granting preliminary approval of the proposed settlement, the Court reviewed these factors and specifically identified multiple indicia of collusion Plaintiff needed to address in their request for final approval. 1/26/2024 Order at 14-16. After receiving supplemental briefing from Plaintiff and Plaintiff's renewed motion for final approval, the Court now reconsiders these factors to ensure that the proposed settlement is fair,

adequate and reasonable.

a.    *The Strength of Plaintiff's Case*

When assessing the strength of a plaintiff's case, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992). Such an assessment, however, "is not intended to involve any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation" since "[s]uch a determination would not be possible because the evidence was never fully presented." *Id.*

Plaintiff asserts this action has a maximum recovery on all claims, inclusive of derivative and penalty claims, of approximately $39.4 million, comprised of an estimated $22.9 million for non-PAGA California damages, $7.2 million for FLSA damages, and $9.2 million for PAGA penalties. Pl. Renewed Mot. for Fin. Appr. at 11 n 7. However, Plaintiff has identified substantial risks and uncertainties posed by continued litigation as to some of his claims. *Id.* at 24-25. Plaintiff contends the recovery of damages and PAGA penalties would present challenges due to potential risk that the Court may decline class certification for at least some of Plaintiff's claims as the case progressed. *Id.* Specifically, Plaintiff contends off-the-clock claims may pose some difficulty in receiving class certification due to the "nature, cause, and amount of the off-the-clock work" that "may vary based on the individualized circumstances of the worker." *Id.* at 24. Not only did CSRs perform work at various locations around California and the country, but there is also a lack of documentary evidence and reliable employee testimony to support these claims. *Id.* at 24-25. Although Plaintiff is confident he will be successful in establishing that common policies and practices give rise to the off-the-clock work for CSRs, Plaintiff acknowledges weaknesses in his case that may threaten class certification if the case proceeded with litigation. *Id.* In reaching a settlement that was

1    reasonable, Plaintiff states parties engaged in extensive formal discovery to assess the

2    claims and potential defenses in this action and relied on Class Counsel's substantial

3    litigation experience in similar wage and hour class and collective actions to determine

4    liability and damages. *Id.* at 23.

5         Plaintiff's assessment of the strengths and weaknesses in this case is reasonable.

6    Plaintiff has identified potential evidentiary challenges to a portion of his claims which

7    may impact his full recovery. Plaintiff's assessment that he may not be able to obtain the

8    full recovery on all claims is reflected by the settlement, which indicates a significant

9    reduction in Plaintiff's initial maximum recovery evaluation. In addition, Defendants

10   recognize the defense of prolonged litigation is expensive and requires substantial

11   amounts of resources and time, which by reaching a settlement, resolves the case and

12   allows them to refocus their efforts. *Id.* at 3. Accordingly, this factor weighs in favor of

13   granting final approval.

14              b.    *The Risk, Expense, Complexity, and Likely Duration of*
                     *Further Litigation and Risk of Maintaining Class Action Status*
15                   *Through Trial*

16        "[T]here is a strong judicial policy that favors settlements, particularly where

17   complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095,

18   1101 (9th Cir. 2008). "Thus, approval of settlement is preferable to lengthy and

19   expensive litigation with uncertain results." *Carlin*, 380 F. Supp. 3d at 1010 (internal

20   quotation marks and citation omitted). In resolving this case by settlement, "prompt,

21   certain, and very substantial recovery" is guaranteed for the Settlement Class Members.

22   Pl. Renewed Mot. for Fin. Appr. at 25. Continued litigation, however, will present

23   substantial risks and uncertainties as identified above. *Id.* at 24. Accordingly, the

24   settlement provides clear benefits to the Settlement Class Members and as such, weighs

25   in favor of granting final approval.

26              c.    *The Amount Offered in Settlement*

27        In evaluating the fairness of the settlement award, the court should "compare the

28   terms of the compromise with the likely rewards of litigation." *Protective Comm. for*

*Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *see also* Fed. R. Civ. P 23(e)(2)(C)-(D). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Here, the Gross Settlement Amount is $3,450,000, resulting in a Net Settlement Amount of approximately $2,133,300. Pl. Renewed Mot. for Fin. Appr. at 21. The average gross recovery for California Class Members is $1,694.22 and the average gross recovery for Opt-in Plaintiffs is $701.34, with 431 individuals receiving payments in excess of $3,000 and 916 individuals receiving payments in excess of $1,000. Decl. Carolyn Cottrell ¶ 78 (ECF No. 85-2). The largest overall gross payment is $4,472.29. *Id*. Given no objections have been filed, and only one California Class Member opted out of the Settlement, the Court strongly presumes that the terms of the settlement are favorable to the Settlement Class Members. Accordingly, this factor weighs in favor of granting final approval.

                d.    *The Extent of Discovery Completed and Stage of Proceedings*

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotation marks and citation omitted). Approval of a class action settlement "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291

1    F.R.D. 443, 454 (E.D. Cal. 2013). "A settlement following sufficient discovery and

2    genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecommunications*

3    *Coop.,* 221 F.R.D. at 528.

4         Here, the Parties engaged in extensive informal discovery that enabled both sides

5    to assess the strengths and weaknesses of the case, as well as inform their settlement

6    negotiations. Pl. Renewed Mot. for Fin. Appr. at 23. Plaintiff asserts involvement of a

7    skilled, neutral mediator and access to information gained through discovery ultimately

8    assisted the parties in reaching a fair resolution. *Id.* Further, even after the conclusion of

9    mediation, the parties spent "several weeks discussing settlement and negotiating the

10   settlement agreement, with several rounds of meet and confer and correspondences

11   related to the terms and details of the Settlement." *Id.* at 25. The Parties also engaged in

12   further negotiations for the Amended Settlement Agreement and Addendum. *Id.* Given

13   the sufficiency of discovery obtained and the clear arms-length negotiations, this factor

14   weighs in favor of granting final approval.

15                    e.    *The Experience and Views of Counsel*

16        Class Counsel have filed declarations in support of Plaintiff's renewed motion

17   detailing their extensive experience in litigating class, collective, and PAGA actions.

18   Cottrell Decl. ¶¶ 6-12; Decl. Tamra Givens ¶¶ 4-13 (ECF No. 85-6). Given Class

19   Counsel's specialized experience and view that the "proposed Settlement achieves an

20   excellent result for the Settlement Class Members," (Cottrell Decl. ¶ 95) and "meets or

21   exceeds standards of fairness, reasonableness and adequacy" (Givens Decl. ¶ 22), the

22   Court finds that this factor weighs in favor of granting final approval.

23                    f.    *The Reaction of the Class Members to the Proposed*
                            *Settlement*
24

25        As previously discussed, there is a strong presumption that the terms of a

26   proposed class settlement action are favorable absent a large number of objections. *See*

27   *Nat'l Rural Telecommunications Coop.,* 221 F.R.D. at 529. According to the ILYM Group,

28   as of October 18, 2024, only 1 request for exclusion to the Settlement was received and

no objections to the Settlement were received. Rubalcava Decl. ¶¶ 17-18. Similarly, no Class Members appeared at the final fairness hearing to raise any objections to the proposed settlement and Class Counsel confirmed at the final approval hearing that no objections had been received. Accordingly, the Court finds that this factor weighs in favor of granting final approval.

g.    *Absence of Collusion*

The Court now turns to whether any of the "subtle signs" of collusion recognized by the Ninth Circuit are found here. *See Bluetooth*, 654 F.3d at 947. The Court did note concerns of collusion in its January 26, 2024 Order, which the Court addresses below.

First, the Court does not find that Class Counsel is seeking a disproportionate distribution of the settlement. Here, the average net recovery for each Class Member is $1,694.22 and Class Counsel seeks $1,150,000 in attorneys' fees. Although the award of attorneys' fees being sought, 33.3% of the settlement fund, is on the high end of the amount awarded in the Ninth Circuit, it does not appear that Class Counsel seeks to receive a disproportionate distribution of the settlement. See *Morales v. Stevco, Inc.*, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Aldapa v. Fowler Packing Co. Inc.*, 2023 WL 3853482, at *8 (E.D. Cal. June 6, 2023) (granting final approval of a class action settlement with an average individual class member recovery of between $223.95 to $4,767.70 and an award of $2,625,000 in attorneys' fees). Here, though the Court declines to grant the full request for attorneys' fees as discussed below, the requested amount is approximately 33.3% of the total settlement award, which is within the range that the Ninth Circuit has found acceptable.

Second, the Amended Settlement includes a "clear sailing" arrangement, in which Defendants agreed "not to oppose any Fee Award request up to thirty-three and one-third percent (33.33%) of the Gross Settlement Amount." (ECF No. 57-3 at 13.) Although the "very existence of a clear sailing provision increases the likelihood that class counsel

will have bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at 948 (internal quotation marks and citation omitted), the existence of a clear sailing provision is not necessarily fatal to final approval. Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id*. (internal quotation marks and citation omitted). Here, Plaintiff asserts the requested attorneys' fees is a percentage of the fund and not a separate agreement to overpay Plaintiff's counsel in exchange for an unfair settlement to the Class. Pl. Renewed Mot. Fin. Appr. at 26. Instead, Plaintiff argues the interests of Class Counsel and the Class are aligned in maximizing the amount in the overall settlement amount. *Id*. at 26-27. The Court is satisfied that the fees that Class Counsel requests do not unjustly enrich counsel at the expense of class members. Specifically, the Court notes that if the request for 33.33% in attorneys' fees is reduced by the Court, the additional funds resulting will be added to the settlement proceeds and distributed to the Settlement Class Members and will "not be a basis for nullification" of the settlement, "delay or preclude the judgment from becoming a final judgment or the Settlement from being Effective," and will not impact the settlement from being effective. (ECF No. 57-3 at 13.) In addition, the Parties did not arrange for any unawarded amount of attorneys' fees to revert back to Defendants. (ECF No. 57-3 at 13.)

Finally, the proposed service award to Plaintiff does not present concerns of collusion. The settlement is not conditioned upon approval of Plaintiff's service award. Pl. Renewed Mot. Fin. Appr. at 27-28. Plaintiff agrees to the settlement whether the service award is awarded in full, or no service award is made at all. *Id*. The Court's concerns of collusion as to the service award are therefore resolved.

Accordingly, the Court finds that this factor weighs in favor of granting final approval.

h.    *PAGA Penalties*

The Amended Settlement also provides for $100,000 in civil PAGA penalties.

(ECF No. 57-3 at 14.) Pursuant to PAGA, 75%, or $75,000, will be paid to the LWDA, and 25%, or $25,000, will be distributed to the PAGA Group on a pro rata basis as set forth in the Amended Settlement Agreement. *Id.* In addition, a copy of the Amended Settlement Agreement was also submitted to the LWDA as required pursuant to California Labor Code § 2699(l)(2). (*See* ECF No. 57-3 at 17.) Consistent with the Court's January 26, 2024 Order, the Court finds that the amount of PAGA penalties under the settlement is fair, reasonable, and adequate in light of PAGA's public policy goals.

After considering all the relevant factors, the Court is convinced that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. Proc. 23(e).

**C.    Final Approval of FLSA Collective Settlement**

As provided in the January 26, 2024 Order, the Ninth Circuit has not yet established consistent criteria for district courts to evaluate whether an FLSA settlement should be approved. 1/26/2024 Order at 7. In this circuit, district courts look to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) (citing *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352-55 (11th Cir. 1982)). "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (internal quotation marks and citation omitted).

Once a bona fide dispute is established, "[c]ourts often apply the Rule 23 factors in evaluating the fairness of an FLSA settlement, while recognizing that some do not apply because of the inherent differences between class actions and FLSA actions." *Khanna v. Inter-Con Sec. Sys., Inc.*, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013) (internal quotation marks and citation omitted). Because this Court has found this settlement to be fair and reasonable pursuant to Rule 23, the Court next evaluates whether there is a bona fide dispute regarding the existence and extent of Defendants'

1    FLSA liability.

2          In the January 26, 2024 Order, the Court found that a bona fide dispute existed

3    based on legitimate questions about the existence and extent of Defendants' FLSA

4    liability. 1/26/2024 Order at 13-14. The Court adopts the findings in its January 26, 2024

5    Order that a bona fide dispute exists. Specifically, the First Amended Complaint alleges

6    FLSA violations that Defendants filed an answer to, denying each allegation and raising

7    affirmative defenses. *See* Answer (ECF No. 10). Also, the settlement contemplates the

8    release of the FLSA claims for exchange of consideration. *See* Cottrell Decl. ¶ 71. Based

9    on the information provided, the Court concludes that a bona fide dispute as to

10   Defendants' FLSA liability exists and will therefore approve the Parties' FLSA collective

11   settlement.

12         **D.    Conclusion**

13         In conclusion, for the above reasons, the Court grants Plaintiff's Renewed Motion

14   for Final Approval of Class and Collective Action Settlement.

15   **III.   RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS**

16         As noted above, Plaintiff has also filed a renewed motion for attorneys' fees,

17   costs, and service award. Pl. Renewed Mot. Atty Fees (ECF No. 84).

18         **A.    Attorneys' Fees**

19         This Court has an "independent obligation to ensure that the award [of attorneys'

20   fees], like the settlement itself, is reasonable, even if the parties have already agreed to

21   an amount." *Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from

22   a common fund, the relationship between the class members and class counsel "turns

23   adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir.

24   2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir.

25   1994). As such, the district court assumes a fiduciary role for the class members in

26   evaluating a request for an award of attorneys' fees from the common fund. *In re*

27   *Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir.

28   2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks and citation omitted). As noted above, the Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. *Vizcaino*, 290 F.3d at 1047-48; *see also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.") (citation omitted).

Reasons to vary from the benchmark award may be justified when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, the settlement provides that Class Counsel will seek an award of 33.33% of the Gross Settlement Amount, equivalent to $1.15 million. Pl. Renewed Mot. Atty Fees at 1. In granting preliminary approval of the proposed settlement, the Court noted that Plaintiff "had not demonstrated that an award exceeding the presumed 25% benchmark or the proposed fee [was] justified." 1/26/2024 Order at 17. In addition, the Court ordered counsel to brief "the fee application using the lodestar method as a cross-check, which [would] assist the court in confirming the reasonableness of the requested fees" and "note the differences in the prevailing rates between the Eastern District of California and other districts" when submitting the final approval motion. *Id*. at 18. At the final fairness hearing, the Court raised concerns as to the hourly rates of attorneys and non-attorneys from Schneider Wallace Cottrel Konecky ("SWCK") and the lack of information provided by SWCK where SWCK failed to provide background information for their attorneys and staff, prevailing market rates in the relevant legal community for attorneys and staff with similar years of experience, and support for approval of rates for non-attorney staff. The Court also noted that it would be conducting a lodestar cross-check to assess the reasonableness of the requested fees in its review of Class Counsel's request for attorneys' fees. In addition, at the final fairness hearing, the Court ordered supplemental briefing on these issues, which Class Counsel submitted, but which unfortunately remains deficient. (ECF Nos. 86, 87.) The Court now turns to its examination of the proposed attorneys' fees award. Class Counsel contends a fee award of 33.33% of the Gross Settlement Amount is reasonable for several reasons.

First, Class Counsel contends an upward adjustment from the 25% benchmark is reasonable because "[c]ourts have customarily approved payments of attorneys' fees amounting to one-third of the common fund, including in comparable wage and hour class actions." Pl. Renewed Mot. Atty Fees at 8. Second, Class Counsel contends fee awards of approximately 33 1/3% are typical for settlements up to $10 million in the Northern District of California. *Id*. at 9 (collecting cases), 15. Third, Class Counsel argues they achieved "excellent recoveries," including: (1) an average gross recovery for

California Class Members of $1,694.22; (2) an average gross recovery for Opt-in Plaintiffs of $701.34; (3) 431 individuals will receive recoveries in excess of $3,000; (4) 916 individuals will receive payments in excess of $1,000; (5) California Class Members are eligible to receive payment from the FLSA allocation and the PAGA allocation; and (6) the largest overall gross payment is $4,472.29. *Id*. at 10. Fourth, Class Counsel contends they took on substantial risk inherent in litigating a class action, especially related to class certification and decertification because recovery of damages and penalties at trial would require complete success and certification of all of Plaintiff's claims, an uncertain feat due to the evidentiary challenges in this action and the development of the legal landscape in wage and hour, and class and collective action cases. *Id*. at 11-12. Fifth, Class Counsel argues the Settlement Class Members were represented by highly experienced counsel who specialize in wage and hour and class action cases, which resulted in an excellent recovery. *Id*. at 12-13. Sixth, Class Counsel argue they undertook all the risk of this litigation on a contingency basis for four years, and have litigated this action with no payment and no guarantee that their time or money would result in any recovery. *Id*. at 13-14. Finally, Class Counsel contends the absence of objections to the settlement, despite notice, favors Class Counsel's 33.33% fee request. *Id*. at 15-16.

While the Court acknowledges that the case was handled on a contingency basis with the risk of litigating with no recovery, the Court finds that this action is a fairly typical wage and hour class action with a reasonable recovery. In its assessment, the Court considered Class Counsel's achievement of a favorable settlement for the Settlement Class Members, the nature of the action, extent of discovery and discovery completed, the completion of mediation and the subsequent negotiations, and found the results for the class are reasonable but not exceptional. *Vizcaino*, 290 F.3d at 1048-50. In light of Class Counsel's experience with wage and hour class actions, and its recovery of millions of dollars on behalf of class members in other actions, the Court finds these considerations favor a benchmark of 25%. The Court further notes that there have been

19

issues in this case that also demonstrate special circumstances are not present, as explained below, to justify exceeding the 25% benchmark. Accordingly, taking "into account all the circumstances of the case," the Court finds it appropriate to award attorneys' fees at the 25% benchmark. *See id.* at 1048.

The Court next applies a lodestar cross-check to assess the reasonableness of attorneys' fees. Where a lodestar is merely being used as a cross-check, the court "may use a rough calculation of the lodestar." *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011). In certain situations, a multiplier added to the lodestar amount may be appropriate. "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citation omitted); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

Class Counsel states that the total lodestar amount is $658,144.50, which consists of $454,234.50 in fees generated from SWCK and $203,910 in fees generated from the Shavitz Law Group, P.A. ("SLG"). Pl. Renewed Mot. Atty Fees at 16, n. 10. Class Counsel contends the requested fee of 33.3% would result in a multiplier of approximately 1.747. *Id*. at 17. At the final fairness hearing, the Court ordered SWCK to file a supplemental brief providing additional background on its attorneys and clerical staff for whom fees were sought and the market rates of the Sacramento legal community as this information had not been submitted to the Court. (*See* ECF No. 86.) However, SWCK failed to provide sufficient support that the stated hourly rates reflect the market rate within Sacramento and failed to provide relevant information or background as to three of its attorneys (Caroline Cohen, Kristabel Sandoval, and Robert Morelli). (*See* ECF No. 87 at 7.) SWCK also only included background information for five of the twenty-two non-attorney staff and did not provide support for approving fees for staff positions such as an operations manager, a case manager, a docketing

specialist, an intake manager, an outreach supervisor, an accounting specialist, a

docketing clerk, and an office services staff member. In support of its fee request, SWCK

relies on cases primarily from outside this district to establish their rates are within

prevailing market rates. (*See* ECF No. 87 at 7-8.) SWCK does include one Eastern

District of California case, *Wright v. Frontier Mgmt LLC*, 2:19-cv-01767-JAM-CKD (March

13, 2023), where SWCK's fees were granted at a slightly lower rate than what is being

requested here, and were based on rates found to be "within the prevailing range of

hourly rates charged by attorneys providing similar services in class action, wage-and-

hour cases in California." ECF No. 87 *at* 7; *Wright*, 2:19-cv-01767-JAM-CKD, ECF No.

103 ¶ 7. Here, however, the Court will rely on rates this Court has consistently accepted

as reasonable in similar class action settlements in Eastern District of California cases

for its lodestar cross-check analysis.

In order to apply a lodestar cross-check, the Court first examines the information

submitted by Class Counsel regarding its attorneys and staff, and determines the

reasonable hourly rates in Sacramento.  Under the "lodestar" method, the number of

hours reasonably expended is multiplied by a reasonable hourly rate. *Gonzalez v. City of

Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Reasonable hourly rates are determined

by the prevailing market rates in the relevant community "for similar work performed by

attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin.,

Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th

Cir. 1997)). Here, the relevant community is Sacramento, which is where this district

court sits. *See Camacho*, 523 F.3d at 979.

SWCK personnel who worked on this matter include partner attorneys with hourly

rates of $1,295 to $1,155, associate attorneys with hourly rates of $685 to $985,

paralegals with hourly rates of $325 to $500, and clerical staff with hourly rates of $250

to $275. Cottrell Decl., Exh. 3 (ECF No. 87). These requested rates are significantly

higher than those previously accepted by this Court as reasonable. *See*, *e.g.*, *Am. Multi-

Cinema, Inc. v. Manteca Lifestyle Ctr., LLC*, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26,

2024) (awarding $700 per hour for partners and $375 per hour for associate attorneys);
*Mostajo v. Nationwide Mut. Ins. Co.*, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023)
(approving requested rates of $650 to $750 for attorneys with over thirty years of
experience, $200 for paralegals and law clerks, and $375 to a third-year attorney);
*Velasco v. Mis Amigos Meat Market, Inc.*, 2013 WL 5755054, at *12 n.4 (E.D. Cal. Oct.
23, 2013) (approving a partner hourly rate of $650, a senior associate hourly rate of
$495, and a junior associate hourly rate of $395). As a result, the Court will adjust
SWCK's rates downward to match the highest rates previously accepted in this district
for attorneys with similar years of experience, reflecting the following acceptable hourly
rates: $750 for Partner Cottrell; $650 for Partners Edelstein and Leimbach; $495 for
Associate Watson; $395 for Associates Hecht, Gordon, and Smith; and $200 for
individuals classified as paralegals. *See* Cottrell Decl., Exh. 3. Because SWCK failed to
provide background information as to the number of years of experience for attorneys
Caroline Cohen, Kristabel Sandoval, and Robert Morelli, despite being ordered to do so,
the Court will reduce fees for these three attorneys to acceptable hourly rates for
associates at $375.

As for non-attorney staff, the Court finds recovery for paralegals is warranted. *See*
*Sanchez,* 2021 WL 1813190, at *9-10. The Court does not find recovery for other non-
attorney staff is warranted here and Class Counsel has not identified binding authority to
grant such rates. SWCK also failed to provide any background information for seventeen
(17) of the twenty-two (22) non-attorney staff for whom it seeks fees. Therefore, the
Court deducts from its analysis fees sought for the following SWCK staff positions: an
operations manager, a case manager, a docketing specialist, an intake manager, an
outreach supervisor, an accounting specialist, a docketing clerk, and an office services
staff member. *See Rojas v. Zaninovich*, 2015 WL 3657172, at *30 (E.D. Cal. June 11,
2015), *report and recommendation adopted*, 2015 WL 13662178 (E.D. Cal. Oct. 2, 2015)
(disapproving hours for work performed by "document clerks" in its lodestar calculation
due to the clerical nature of tasks performed).

In addition, Plaintiff's motion for attorney's fees did not include sufficient information regarding SWCK's fees where background information was not provided for nine out of the ten attorneys, prevailing market rates in the relevant legal community for attorneys and non-attorney staff were not provided, and support for approving rates for non-attorney staff was not included, despite the January 26, 2024 Order's clear instruction to address the lodestar cross-check. *See* 1/26/2024 Order at 18. After addressing this deficiency at the hearing, the Court again ordered supplemental briefing, but unfortunately, SWCK's supplemental brief remained deficient, as described above.

As for rates submitted by SLG, the Court finds these rates are reasonable and consistent with their years of experience and prevailing rates in this district. SLG personnel who worked on this matter include partner attorneys with hourly rates of $650 to $750, an of counsel with an hourly rate of $700, an associate attorney with an hourly rate of $650, and a legal assistant with an hourly rate of $150. Givens Decl. ¶ 16. The Court finds these rates are fair and reasonable in this case for lodestar cross-check purposes. Unlike SWCK, SLG did not submit fees for clerical staff. *See* Givens Decl. ¶ 16.

Having determined the reasonable hourly rate, the Court then turns to the number of hours reasonably expended. The Court notes that additional hours spent on this litigation could have been avoided. For example, the parties initially identified a *cy pres* beneficiary with no connection to the class or issues in this lawsuit despite clear caselaw to the contrary. Despite the Court's express warning in its January 26, 2024 Order regarding the original proposed *cy pres* beneficiary, *see* 1/26/2024 Order at 20-21, Plaintiff failed to address or correct this issue in his motion for final approval. As a result, the Court issued a Minute Order on July 11, 2024 noting the deficiencies and ordering Plaintiff to submit a supplemental brief to address them. 7/11/2024 Minute Order (ECF No. 74). In addition, January 26, 2024 Order required counsel to brief "the fee application using the lodestar method as a cross-check, which [would] assist the court in confirming the reasonableness of the requested fees" and "note the differences in the

1   prevailing rates between the Eastern District of California and other districts" when

2   submitting the final approval motion. 1/26/2024 Order at 18. Counsel failed to follow this

3   instruction, and at the final fairness hearing, the Court raised concerns with the lack of

4   information provided by SWCK for their attorneys and staff. As a result, the Court again

5   ordered supplemental briefing, which Class Counsel submitted but unfortunately remains

6   deficient. (ECF Nos. 86, 87.) Despite the Court's ability to further reduce the number of

7   hours expended based on these issues, the Court limits its reduction to deducting the

8   SWCK clerical staff time for which attorney's fees may not be awarded as described

9   above. The Court otherwise concludes the number of hours expended by SLG and

10  SWCK to be reasonable.

11      The Court next calculates the lodestar, which is the number of hours reasonably

12  expended multiplied by the reasonable hourly rates (using the reasonable hourly rates

13  identified). The Court's calculated lodestar is $466,878. Because the lodestar is being

14  used here as a cross-check, the Court may use a "rough calculation of the lodestar."

15  *Bond*, 2011 WL 2648879, at *12; *see also Bellinghausen v. Tractor Supply Co.*, 306

16  F.R.D. 245, 264 (N.D. Cal. 2015) ("mathematical precision" not required for lodestar

17  cross-check) (internal quotation marks and citation omitted).

18      The Court then compares the 25% fee award of the Gross Settlement ($862,500)

19  to the lodestar amount ($466,878). While the 25% fee award is significantly higher than

20  the lodestar amount, a multiplier may be added to increase the fee award. Here, a 25%

21  fee award represents a 1.847 multiplier of the lodestar, which is in the permissible range

22  of multipliers. *See Ferrell v. Buckingham Property Management*, 2022 WL 224025, at *3

23  (E.D. Cal. 2022) (quoting Newberg on Class Actions) ("[C]ourts typically approve

24  percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and 'the

25  multiplier of 1.9 is comparable to multipliers used by the courts.'"); *Ontiveros v. Zamora*,

26  303 F.R.D. 356, 375 (E.D. Cal. 2014) (reducing class counsel's attorneys' fees request

27  of 33.3% to the benchmark award of 25% and taking into account a multiplier of

28  approximately 1.54).

Accordingly, the Court finds an award of attorneys' fees of 25% ($862,500) is fair and reasonable, and adequately compensates counsel for the time expended in this matter.

### B.    Class Counsel's Costs

Class Counsel also seeks to recover the costs expended while prosecuting this litigation. Such awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig, 497 F. Supp*. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*. Here, Class Counsel requests costs totaling $5,271.82 for out-of-pocket expenditures, including mediation fees, research, filings fees, and printing costs. Pl. Renewed Mot. Atty Fees at 18; Cottrell Decl., Exh. 2. Review of Class Counsel's supporting documentation finds the charges incurred to be reasonable. *See* Cottrell Decl. ¶ 108 & Exh. 2. Accordingly, the Court approves the reimbursement of costs of $5,271.82.

### C.    Plaintiff's Service Award

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. However, the decision to approve such an award is a matter within the court's discretion. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 463. Generally speaking, incentive awards are intended to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives....[C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed

the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164-65 (9th Cir. 2013) (internal quotation marks and citation omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). In the Ninth Circuit, courts typically find an incentive award of $5,000 to be "presumptively reasonable." *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (endorsing $5,000 service awards to named representatives). "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Plaintiff has requested a $15,000 service award as class representative. Pl. Renewed Mot. Atty Fees at 19. Plaintiff has submitted a declaration stating that he had "many telephone calls with Plaintiff's counsel to help" with the investigation and settlement discussions, "searched personal files, emails, and computer files for documents related" to the case, reviewed documents and provided feedback, assisted in providing information for mediation and settlement discussions, and had agreed to list his name on the public docket to help other CSRs who also worked unpaid time. Decl. Michael Schmidt ¶¶ 3-9 (ECF No. 84-7). However, Plaintiff's declaration failed to detail the amount of hours worked over the course of four years. In the Court's January 26, 2024 Order, Plaintiff was warned that the incentive award may be reduced depending on the briefing provided at the final approval stage. 1/26/2024 Order at 18 n. 7. At the final fairness hearing, the Court also raised concerns that Plaintiff's declaration did not demonstrate the number of hours expended by Plaintiff. At the hearing, attorney Ori

1    Edelstein estimated Plaintiff had expended 30-40 hours but confirmed he did not have

2    the exact number of hours, which the Court accepted. However, because Plaintiff's

3    request is over eight (8) times larger than the average settlement payment to class

4    members pursuant to the settlement and the number of hours expended in this litigation

5    is low for an incentive award of $15,000, these factors weigh against granting Plaintiff his

6    full requested award. The Court finds the requested incentive award of $15,000 is

7    unreasonable.

8        Because the Court recognizes the effort and risk undertaken by Plaintiff as the

9    Class Representative in reaching a settlement and the number of hours spent by Plaintiff

10   in this action are estimated to be 30-40 hours, the Court finds an award of $10,000 is

11   appropriate. *See Castro v. Paragon Indus., Inc.*, 2021 WL 2042333, at *13 (E.D. Cal.

12   May 21, 2021) (granting $10,000 incentive award for 70 hours of work over three years);

13   *Acosta v. Evergreen Moneysource Mortg. Co.*, 2019 WL 6051117, at *18 (E.D. Cal. Nov.

14   15, 2019) (granting $10,000 incentive award for 40 hours of work); *Dearaujo v. Regis*

15   *Corp.*, 2017 WL 3116626, at *15 (E.D. Cal. July 21, 2017) (granting $15,000 award for

16   380 hours of work). In addition, although Class Counsel had the opportunity to

17   substantiate the appropriateness of Plaintiff's requested incentive award of $15,000, no

18   additional support was provided in its supplemental brief. (*See* ECF No. 87.)

19       **D.    Settlement Administrator Costs**

20       The Court previously approved the appointment of the ILYM Group to serve as

21   the settlement administrator in this action. 1/26/2024 Order at 21. According to the

22   declaration of Ms. Rubalcava, the total fees and costs for services in the administration

23   of the settlement, which includes fees and costs up to date and future costs for

24   completion, is $26,700. Rubalcava Decl. ¶ 24. The Court finds these administration costs

25   reasonable and will direct payment in the requested amount.

26       **E.    Conclusion**

27       In conclusion, for the above reasons, the Court grants in part Plaintiff's renewed

28   motion for attorneys' fees and costs and service award.

**IV.    CONCLUSION**

For the reasons stated above:

1.    Plaintiff's renewed motion for final approval of class and collective action settlement (ECF No. 85) is GRANTED;

2.    The Court hereby approves the settlement as fair, reasonable and adequate;

3.    The Court will exclude the one individual who requested exclusion from the settlement and this Order on the basis of the individual's request for exclusion. This individual has opted out of the settlement, and this individual shall not be paid any monies under the settlement and shall not be subject to the release of any claims under the settlement;

4.    The Court reaffirms the appointment of Michael Schmidt as Class Representative for the California Class and Opt-In Plaintiffs;

5.    The Court reaffirms the appointment of Schneider Wallace Cottrell Konecky LLP and Shavitz Law Group, P.A. as Class Counsel for the California Class and Opt-In Plaintiffs;

6.    Plaintiff's renewed motion for award of attorneys' fees and costs and service award (ECF No. 84) is GRANTED IN PART, and awards attorneys' fees in the amount of $862,500 to Class Counsel, which represents 25% of the total settlement value;

7.    The Court awards litigation costs in the amount of $5,261.42 to Class Counsel;

8.    The Court awards Plaintiff Michael Schmidt a service award of $10,000;

9.    The Court approves the $100,000 PAGA allocation and the payment of $75,000.00 to the Labor and Workforce Development Agency ("LWDA") for Plaintiff's claims pursuant to the PAGA;

10.    The Court reaffirms the appointment of ILYM Group, Inc. ("ILYM Group") as Settlement Administrator and approves its reasonable administration

28

costs of $26,700, which are to be paid from the Gross Settlement Amount;

11.  The Court approves the National Employment Law Project ("NELP"), as the *cy pres* beneficiary;

12.  The Court hereby orders that all claims that are released as set forth in the Settlement are barred;

13.  The Court permanently enjoins all of the Settlement Class Members and the LWDA from pursuing, or seeking to reopen, any released claims (as defined in the Settlement at Paragraphs 21-25 and the Notices of Settlement at Section 5) against any of the "Releasees" (as defined in the Settlement at Paragraph 2.x) as of the date of entry of this Order and Judgment;

14.  The Court dismisses this action with prejudice and HEREBY ENTERS JUDGMENT consistent with the settlement and this Order; and

15.  The Clerk of the Court is directed to close this action.

Dated:  March 3, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

4, schm2400.20

29